

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-21-2001

# In Re: Grand Jury Investigation

Precedential or Non-Precedential:

Docket 00-5186

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: Grand Jury Investigation" (2001). *2001 Decisions.* Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 20, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5186

I M P O U N D E D

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 97-MC-00389
(Honorable Nicholas H. Politan)

Argued October 31, 2000

Before: SCIRICA, NYGAARD and BARRY , Circuit Judges

(Filed February 20, 2001)

 ALLAN TANANBAUM, ESQUIRE
  (ARGUED)
 GEORGE S. LEONE, ESQUIRE
 Office of United States Attorney
 970 Broad Street, Room 700
 Newark, New Jersey 07102

  Attorneys for Appellant

 CATHY FLEMING, ESQUIRE
 Wolf, Block, Schorr & Solis-Cohen
 250 Park Avenue
 New York, New York 10177

  Attorney for Appellee, John Doe 1

          PAUL J. FISHMAN, ESQUIRE
            (ARGUED)
          Friedman, Kaplan & Seiler
          One Gateway Center, 25th Floor
          Newark, New Jersey 07102

           Attorney for Appellee, John Doe 2

OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this grand jury proceeding, the issue on appeal is
whether, on the facts presented, the crime-fraud exception
overrides the attorney-client privilege. In the proceedings
below, the District Court declined to enforce a grand jury
subpoena issued to an attorney. Citing the crime-fraud
exception, the government has appealed.1

I.

Over four years ago in April 1996, a federal grand jury
commenced investigating the target's business transactions
and issued several subpoenas to the target's affiliated
businesses. The target's attorney assumed responsibility in
responding to the United States Attorney's office. The
government's first subpoena sought,

        all records . . . relating to work performed [by the
        target] . . . . These records should include but are not
        limited to: All business checks, check registers, cash
        receipt and disbursement records. These records
        should also include contracts, invoices, billing
        documents, bid documents and correspondence
        specifically relating to [the target's activities] for the
        [relevant] period.

_____

1. In order to preserve the confidentiality of the proceedings, we will
refer
to the dramatis personae as the target (the target of the investigation)
and the attorney (the target's attor ney who is the witness under
subpoena).

The attorney produced several documents. But believing them inadequate, the government requested fuller document production. The attorney r esponded that certain categories of requested documents did not exist.

In May 1996, the government again requested the documents under its initial subpoena and advised the attorney that "the grand jury will also r equest that the target appear before it with regar d to the production of the documents in question." The attorney pr ovided some additional documents including check ledgers and canceled checks. The target was not summoned to appear before the grand jury.

In September 1996, the government issued a second subpoena requesting additional documents including: general ledgers, cash disbursement journals, cash receipts, sales and accounts payable journals, as well as calenders, diaries and appointment books for all of the tar get's business officers and employees. The attor ney again responded that most of the requested documents did not exist. On January 10, 1997 the government advised the attorney that it was subpoenaing "the custodian of records [of one of] the target business[es] to produce all responsive original records before the Grand Jury next Thursday [January 16]." The government also subpoenaed an officer of the target business to testify befor e the grand jury (also on January 16) about her knowledge of the existence of the subpoenaed documents. The government never enforced its subpoenas.

In April 1997, November 1998, and March 1999 the government subpoenaed more recor ds from the target business. The attorney produced some of the requested documents but again represented that certain categories of documents did not exist. On March 8, 1999, the Federal Bureau of Investigation executed search warrants on the target's home and also on the target's business offices. The FBI uncovered and seized many recor ds and documents the attorney had represented did not exist. On April 30, 1999, the government subpoenaed the attorney to testify before the grand jury about the "source[s] of information for [his] . . . factual assertions . . . and basis for failing to produces [sic] certain categories of recor ds."

3

After the attorney invoked the attorney-client privilege, the government filed a motion to compel his testimony. Claiming the crime-fraud exception invalidated the attorney-client privilege, the government argued the target used the attorney to obstruct justice in violation of 18 U.S.C. S 1503.2 Holding it was "fundamentally unfair" to compel the attorney's testimony, the District Court declined to assess the applicability of the crime-fraud exception. In the Matter of the Grand Jury Empaneled on December 4, 1997, Misc. No. 97-389, slip op. at *8 (D. N.J. February 8, 2000).

The government appeals contending the District Court erred in failing to decide whether the crime-fraud exception applied. It also contends the District Court exceeded its authority in quashing the subpoena because of "fundamental unfairness."

II.

We review the decision to quash a grand jury subpoena for abuse of discretion. In re Grand Jury Proceedings, 115 F.3d 1240, 1243 (5th Cir. 1997). W e exercise de novo review over the legal issues underlying the application of the crime-fraud exception to the attorney-client privilege. United States v. Inigo, 925 F.2d 641, 656 (3d Cir. 1991). We review the District Court's factual deter minations in applying the attorney-client privilege for clear error. Id.

III.

The grand jury plays a unique role in our adversarial system. The Supreme Court has recognized "the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or

_____

2. 18 U.S.C. S 1503 provides:

> Whoever corruptly, or by threats or for ce, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of
the
> United States, . . . or endeavors to influence, obstruct, or impede
the
> due administration of justice, shall be punished . ... .

referee between the Government and the people." United States v. Williams, 504 U.S. 36, 47 (1992). It has stated,

> Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally be confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

Id.

Several cases have recognized the judiciary's limited authority over the grand jury's subpoena and indictment power. See Williams, 504 U.S. at 54-55 (court can not exercise it's supervisory power to requir e prosecutors to present exculpatory evidence to the grand jury); Costello v. United States, 350 U.S. 359, 363-64 (1956) (court may not exercise its supervisory power to mandate a rule permitting defendants to challenge grand jury indictments because of inadequate or incompetent evidence). As we r ecently stated in In re Grand Jury Subpoena,

> Because it is essential to the federal criminal justice system, [the grand jury] . . . has great powers of investigation and inquisition. [It] . . . may generally `compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical pr ocedural and evidentiary rules governing the conduct of criminal trials.'

223 F.3d 213, 216 (3d Cir. 2000) (quoting United States v. Calandra, 414 U.S. 338, 343 (1974)).

"Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's inter est in the fair and expeditious administration of the criminal laws." United States v. Dionisio, 410 U.S. 1, 17 (1973).

As the Supreme Court has made clear,"the government cannot be required to justify the issuance of a grand jury subpoena . . . because the very purpose of r equesting the

5

information is to ascertain whether pr obable cause exists."
United States v. R. Enter., Inc., 498 U.S. 292, 297 (1991)
(citing Hale v. Henkel, 201 U.S. 43, 65 (1906)). "Requiring
the Government to explain in too much detail the particular
reasons underlying a subpoena threatens to compromise
`the indispensable secrecy of the grand jury proceedings.' "
Id. at 299 (quoting United States v. Johnson , 319 U.S. 503,
513 (1943)).

Despite these broad investigatory powers, ther e are some
limitations on the grand jury's authority to subpoena
evidence. See Calandra, 414 U.S. at 346 (the grand jury
"may not itself violate a valid privilege, whether established
by the Constitution, statutes, or the common law");
Branzburg v. Hayes, 408 U.S. 665, 688 (1972) ("the powers
of the grand jury are not unlimited and ar e subject to the
supervision of a judge"); Kastigar v. United States, 406 U.S.
441, 453-54 (1971) (holding grand jury may override a Fifth
Amendment claim only if the witness is granted immunity
co-extensive with the privilege against self-incrimination).
The Supreme Court has stated, "grand juries are not
licensed to engage in arbitrary fishing expeditions, nor may
they select targets of investigation out of malice or an intent
to harass." R. Enter., Inc., 498 U.S. at 299.

As a safeguard against potential abuse of the grand jury's
broad investigative power, the Federal Rules of Evidence
and the Federal Rules of Criminal Procedur e grant limited
authority for courts to review grand jury subpoenas. In this
case, the two principal mechanisms for judicial r eview are
Fed. R. Evid. 501,3 recognizing the attorney-client privilege
_____

3. Fed R. Evid. 501 provides:

     Except as otherwise required by the Constitution of the United
     States or provided by Act of Congress or in rules prescribed by the
     Supreme Court pursuant to statutory authority, the privilege of a
     witness, person, government, State, or political subdivision
thereof
     shall be governed by the principles of the common law as they may
     be interpreted by the courts of the United States in light of
reason
     and experience.

Fed. R. Evid. 1101(d)(2) provides that the rules on privileges
articulated by Fed. R. of Evid. 501 are applicable to grand jury
proceedings. The government here does not contest the attorney's right
to assert the attorney-client privilege.

which protects confidential communications between an attorney and his client from disclosure, and Fed. R. Crim. P. 17(c), providing that "[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive."

IV.

The District Court did not refer to Fed. R. Crim. P. 17(c) nor to the attorney-client privilege when it declined to compel the attorney's testimony. It stated,

> The Court will assume for purposes of its analysis that [the attorney] is innocent of any wrongdoing and has been used merely as a conduit for wrongdoing, i.e., the obstruction of justice. Nevertheless it is fundamentally unfair for the U.S. Attorney's Office to seek [the attorney's] testimony in this case.

In the Matter of the Grand Jury Empaneled on December 4, 1997, at *8.

Reasoning that to obtain the desired information, the government could have pursued avenues less harmful to the attorney-client privilege, including enforcing its subpoenas on the target and the records custodian, the District Court stated,

> The award for neither appointing nor insisting upon a custodian of records cannot be securing the testimony of the subject's attorney. Instead the U.S. Attorney's Office should have acted upon the subpoenas it procured and not assume that it could fall back on the subject's attorney.

Id. at *9.

Compelling the lawyer's testimony, the court said,"goes against the core of the adversarial system and would unnecessarily `drive a wedge' between a client and his attorney, thereby `chilling' communications."4 Id. at *10

_____

4. In discussing the impact of this subpoena on criminal practice, the District Court stated it is common for criminal defense attorneys and the government to informally negotiate the production of materials for grand jury investigations. By forcing attorneys to testify against their clients,
the court feared many criminal defense attorneys would be "unwilling to informally satisfy the subpoena for fear of the consequences." In the Matter of the Grand Jury Empaneled on December 4, 1997, at *10.

(citing Loatman v. Summit Bank, 174 F .R.D. 592, 605 (D. N.J. 1997)).

V.

Because the District Court relied on neither Fed. R. Crim. P. 17 nor an analysis of the crime-fraud exception, the government contends the Court exceeded its authority in quashing the subpoena.

A.

In R. Enter., Inc., 498 U.S. at 299, the Supreme Court discussed the court's limited role in r egulating grand jury subpoenas. A grand jury target sought to quash a government subpoena on the grounds of r elevancy. The Court of Appeals for the Fourth Circuit held the government must establish the relevancy and admissibility of the evidence subpoenaed. The Supreme Court r eversed holding the Court of Appeals improperly placed the burden on the government to prove relevancy. Citing the grand jury's historical independence from the judiciary, the Court said a grand jury subpoena is presumed r easonable unless its recipient demonstrates otherwise. Fed. R. Crim. P. 17(c) permits judicial oversight only when "compliance would be unreasonable or oppressive." 498 U.S. at 298-99. Thus, the Court held trial courts can not place an initial bur den on the government to prove a grand jury subpoena is necessary and relevant.

Similarly, in Baylson v. Disciplinary Bd. of the Supreme Ct. of Pennsylvania, 975 F.2d 102 (3d Cir . 1992), cert. denied, 507 U.S. 984 (1993), we held a Pennsylvania Rule of Professional Conduct governing grand jury subpoena procedures was unenforceable because it interfered with the grand jury's institutional independence. The Supreme Court of Pennsylvania had adopted a Rule of Pr ofessional Conduct which provided:

> A public prosecutor or other governmental lawyer shall not, without prior judicial approval, subpoena an attorney to appear before a grand jury or other tribunal investigating criminal activity in circumstances where

the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been r epresented by the attorney witness. (Citation omitted).

Comment

It is intended that the required `prior judicial approval' will normally be withheld unless, after a hearing conducted with due regard for the appr opriate need for secrecy, the court finds (1) the infor mation sought is not protected from disclosure by Rule 1.6 [concerning confidentiality of information], the attorney-client privilege or the work product doctrine; (2) the evidence sought is relevant to the proceeding; (3) compliance with the subpoena would not be unreasonable or oppressive; (4) the purpose of the subpoena is not primarily to harass the attorney/witness or his or her client; and (5) there is no other feasible alternative to obtain the information sought.

Id. at 104 (quoting Rule 3.10 of the Pennsylvania Rules of Professional Conduct).

The pre-service judicial review mandated by the Pennsylvania rule, we held, exceeded the district court's authority to intervene in grand jury proceedings. Noting the Supreme Court's reluctance to place judicial restraints on the grand jury, see id. at 106-08, and the grand jury's historically recognized independence, we held"the district court may not under the guise of its supervisory power or its local rule-making power, impose the sort of substantive restraint on the grand jury that is contemplated by Rule 3.10." Id. at 110. We also held the Pennsylvania Rule could not be justified under Fed. R. Crim. P. 17 reasoning that neither

Rule 17 nor any other provision in the federal rules or statutes allows for judicial intervention befor e a subpoena is served. Instead subdivision (c) pr ovides that a party may move to quash a subpoena on the grounds that compliance would be unreasonable or oppressive only after it has been served.

Id. at 108.

9

B.

It is well established that courts may not impose substantive limitations on the power of the grand jury to issue subpoenas nor place the initial burden on the government to prove the validity of its subpoenas. See Baylson, 975 F.2d at 106-08. In W illiams, the Supreme Court stated,

> Any power federal courts have to fashion, on their own initiative, rules of grand jury procedur e is a very limited one, not remotely comparable to the power they maintain over their own proceedings. It certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecution, the constituting court, and the grand jury itself. (citation omitted).

504 U.S. at 50.

Similarly in Costello, the Court stated,"it would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfetter ed by technical rules" to permit federal courts to establish independent rules governing the enforcement of grand jury subpoenas. 350 U.S. at 364.

One form of restraint, however, may be found in Fed. R. Crim. P. 17(c). But as noted, the District Court never applied Fed. R. Crim. P. 17(c). Instead, it held that the government must demonstrate the evidence sought could not be obtained by other means. The District Court's prescribed course of action may be salutary and efficacious to safeguard the attorney-client privilege. Under appropriate circumstances, it may well constitute the better practice. But we see no authority for it in the rules or the case law. See R. Enter., Inc., 498 U.S. at 298-99. Generally, the government does not bear the initial bur den to justify its grand jury subpoena. See id.; see also Stern v. United States Dist. Ct. for the Dist. of Massachusetts, 214 F.3d 4, 16 (1st Cir. 2000) (holding local rule which permitted judicial approval of subpoena "alter[ed] the grand jury's historic role, place[d] it under overly intrusive court supervision, curb[ed] its broad investigative powers, reverse[d] the presumption of validity accorded to its

10

subpoenas, undermine[d] the secrecy of its proceedings, and create[d] procedural detours and delays").

The institutional independence and secrecy of the grand jury has been a hallmark of criminal indictments for over three centuries. Any deviation from the established practices governing court involvement should not be taken lightly. We recognize the District Court was concerned with the effect of this subpoena on the attorney-client relationship. But the proper course under Fed. R. Crim. P. 17(c) was to rule on whether the lawyer's testimony was protected under the attorney-client privilege. By employing "a different analysis" based on "fundamental fairness" the District Court deviated from the established procedures which ensure the institutional independence of the grand jury.5 Therefore, the District Court abused its discretion.

VI.

We now turn to whether the District Court erred in its application of the crime-fraud exception to the attorney-client privilege. "Worthy of maximum protection," Haines v. Ligget Group Inc., 975 F.2d 81, 90 (3d Cir. 1992), the attorney-client privilege is one of the "oldest of the privileges for confidential communications known." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). As noted by the Supreme Court, "courts have long viewed [the privilege's] . . . central concern as one to `encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.' " United States v. Zolin, 491 U.S. 554, 562 (1989) (quoting Upjohn, 449 U.S. at 389).6

_____

5. It bears noting that the United States Attorney Manual provides, "Approval [of the Assistant Attorney General for the Criminal Division] is
required to issue [a] grand jury or trial subpoena to attorneys for information relating to the representation of [a] client." U.S. Atty's. Man.
9-13.410.

6. Communications are protected under the attorney-client privilege when:

        (1) legal advice of any kind is sought (2) from a professional legal
        advisor in his capacity as such, (3) the communications relating to

The grand jury may not "itself violate a valid privilege, whether established by the Constitution, statutes, or the common Law." Calandra, 414 U.S. at 346. For this reason, courts may quash an otherwise valid grand jury subpoena for an attorney's testimony under the attorney-client privilege. Fed. R. Evid. 501. When legal advice is sought in furtherance of a crime or fraud, however, the attorney-client privilege is waived and a grand jury may compel a lawyer's testimony. See, e.g., Clark v. United States, 289 U.S. 1, 15 (1933) ("A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told."); Inigo, 925 F.2d at 656 ("when legal consultation is in furtherance of a crime or fraud, the statements . . . will not be protected."). We have described the crime-fraud exception in this manner:

> The attorney-client privilege is designed to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice. That end, however, would be frustrated if the client used the lawyer's services to further a continuing or future crime or tort. Thus, when the lawyer is consulted, not with respect to past wrongdoing but to future illegal activities, the privilege is no longer defensible and the crime-fraud exception comes into play.

In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979) (citations omitted).

A party seeking to compel testimony under the crime-fraud exception bears the initial burden of proving a prima facie case of a crime or fraud before the attorney-client privilege is waived.7 Haines, 975 F.2d at 95-96 ("[T]he party

_____

> that purpose, (4) made in confidence, (5) by the client, (6) are at his
> insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection [may] be waived.

In the Matter of the Grand Jury Empaneled on February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979) (citations omitted).

7. In Clark, 289 U.S. at 14-15, the Supreme Court described the evidentiary standard for the application of the crime fraud exception:

12

seeking discovery must present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception wer e met."); Feldberg v. Walters, 862 F.2d 622, 626 (7th Cir. 1988) ("[A] prima facie case must be defined with regar d to its function: to require the adverse party, the one with superior access to the evidence and in the best position to explain things, to come forward with that explanation."). Here, the government asserts the target business obstructed justice by failing to disclose documents subpoenaed by the grand jury.8 The government maintains it has submitted sufficient prima facie evidence of obstruction of justice to show the existence of a crime, in the form of documents found during the FBI's search of the target business' offices, as well as from ex parte, in camera affidavits. Challenging this assessment, the attorney contends the gover nment presented insufficient evidence that the tar get and the target business corruptly intended to obstruct justice.

The District Court declined to decide whether the government submitted sufficient prima facie evidence of intent to obstruct justice. Although it corr ectly outlined the law, the Court stated,

> Typically, at this point in the Opinion, the Court would begin to analyze whether the Government has articulated a prima facie showing of a fraud or a crime pursuant to 18 U.S.C. S 1503(a) by first examining

_____

> There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in . . . T o drive the [attorney client] privilege away, there must be `something to give colour to the charge;' there must be `prima facie evidence that it has some foundation in fact.' When the evidence is supplied, the seal of secrecy is broken. (citations and footnote omitted).

8. The elements of a prima facie case of obstruction of justice under 18 U.S.C. S1503 are: (1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the pr oceeding in the due administration of justice; and (4) the action had the "natural and probable effect" of interfering with the due administration of justice. See United States v. Collis, 128 F.3d 313, 318 (6th Cir. 1997).

13

whether there is evidence of criminal intent. This court finds, however, that the unique cir cumstances surrounding this case warrant a differ ent analysis than that articulated by the parties.

In the Matter of the Grand Jury Empaneled on December 4, 1997, at *8.

We believe this was error. See, e.g., Clark, 289 U.S. at 15; Haines, 975 F.2d at 90; In re Grand Jury Proceedings, 604 F.2d at 802. The proper course would have been to determine the applicability of the crime-fraud exception to the attorney-client privilege. If the gover nment has submitted sufficient prima facie evidence of a crime or fraud and legal advice was sought from or given by the attorney in connection therewith,9 the attorney-client privilege has been waived, and the grand jury may compel the attorney to testify about his communications with the target. See, e.g., In re Impounded Case (Law Firm), 879 F.2d 1211, 1213-14 (3d Cir. 1989); In Re Sealed Case, 754 F.2d

_____

9. In In re Grand Jury Subpoena, 223 F.3d at 218-19, we held it is not "violative of due process to rely on an ex parte government affidavit to determine that the crime-fraud exception applies and thus compel a target-client's subpoenaed attorney to testify before the grand jury." Id. at 219. Because the need for secrecy in grand jury proceedings prohibits an adversarial proceeding regarding ex parte, in camera evidence, courts may rely exclusively on ex parte materials infinding sufficient prima facie evidence to invoke the crime-fraud exception and "we must rely on the district court's discretion and appellate r eview of the exercise of that discretion to ensure that the power of the grand jury is not abused while preserving the secrecy that is a necessary element of the grand jury process." Id. Where there are no secrecy or confidentialityimperatives, however, there would seem to be no impediment to permitting the attorney to challenge the government's prima facie evidence, subject also to the Supreme Court's admonition to avoid"minitrials." See Dionisio, 410 U.S. at 17; but see Laser Industries, Ltd. v. Reliant Tech., Inc., 167 F.R.D. 417, 420 (N.D. Cal. 1996). In the civil context, we have permitted this. See Haines, 975 F.2d at 96 ("fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege."); see also Feldberg, 862 F.2d at 626 (after prima facie showing that exception applies, party asserting privilege should have opportunity to rebut, "if the court finds the explanation satisfactory, the privilege remains.").

14

395, 399-401 (D.C. Cir. 1985). Absent thisfinding, the attorney may validly assert the attorney-client privilege in response to the grand jury subpoena. See In Re Grand Jury Investigation, 918 F.2d 374, 384 (3d. Cir . 1990) (a party may invoke a historically recognized privilege to protect communications from disclosure to the grand jury). For these reasons, the District Court must decide whether the government has submitted sufficient evidence of the intent to obstruct justice and determine whether this evidence supports a waiver of the attorney-client privilege. Once the court determines there is sufficient evidence of a crime or fraud to waive the attorney-client privilege, we review its judgment for abuse of discretion. In r e Grand Jury Subpoena, 223 F.3d at 219; In r e Grand Jury Subpoenas, 144 F.3d 653, 663 (10th Cir. 1998) ("we find no abuse [of discretion] in either the district court's r efusal to conduct a separate rebuttal hearing or its refusal to reveal the contents of the government's submission").

VII.

For the foregoing reasons, we will vacate and remand for findings under Fed. R. Crim. P. 17(c) and the crime fraud exception to the attorney-client privilege.

15

NYGAARD, Circuit Judge, dissenting :

Because I disagree with the Majority's conclusion that
"the District Court never applied Fed. R. Crim. P . 17(c) [and
instead] held that the government must demonstrate the
evidence sought could not be obtained by other means," I
respectfully dissent. Majority Opinion at 10. I believe that
the District Court validly exercised its discr etion under Rule
17(c) and did not impose a broad "no-alternative-means"
test. Therefore, I would affirm.

The Government claims that the District Court applied a
broad-reaching "no-alternative-means test" to determine
whether the attorney's subpoena was fair and therefore
enforceable. Appellant's brief at 39. Appar ently, the
Majority agrees.1 It holds that the court employed an
analysis "based on `fundamental fairness' [that] deviated
from the established procedures which ensure the
institutional independence of the grand jury." Majority
Opinion at 11. I agree that such a blanket rule, if it were
imposed, would improperly place a substantive limitation
upon the grand jury, is outside the District Court's
supervisory powers, and has been implicitly r ejected by this
Court in Baylson v. Disciplinary Bd., 975 F .2d 102 (3d Cir.
1992). See Appellant's brief at 39-41.

However, I disagree with the Majority's characterization of
the District Court's holding. The District Court did not
impose a new substantive limitation upon the grand jury.
Rule 17(c) of the Federal Rules of Criminal Pr ocedure states
that "[t]he court . . . may quash or modify[a] subpoena if
compliance would be unreasonable or oppr essive." See also
United States v. R. Enters., Inc., 498 U.S. 292, 299 (1991).
The Majority recognizes Rule 17(c) as a valid"form of
restraint" upon the grand jury, but nonetheless holds that
the District Court failed to apply it. Majority Opinion at 10.
I concede that the District Court never explicitly invoked
Fed. R. Crim. P. 17(c), but such an omission is not fatal as

_____

1. At the very least, the Majority believes that the District Court
"impose[d] substantive limitations on the power of the grand jury [and
placed] the initial burden on the gover nment to prove the validity of its
subpoenas." Majority Opinion at 10.

16

long as what the court did is clear.[2] Furthermore, we "may affirm the District Court on any grounds supported by the record." Nicini v. Morra, 212 F .3d 798, 805 (3d Cir. 2000).

The District Court in his case considered the specific facts and circumstances before it and found that it was "fundamentally unfair for the U.S. Attorney's Office to seek [the attorney's] testimony."[3] Rule 17(c) empowers a court to

_____

2. See United States v. Baird, 109 F.3d 856, 862 (3d Cir. 1997) ("Although the court did not explicitly state that it was denying the motion, nor did it state the reasons for doing so, it is clear from the record that the court carefully considered Baird's cooperation within the S 5K1.1 frame of reference.");Fellheimer, Eichen & Braverman, P.C. v. Charter Techs. Inc., 57 F.3d 1215, 1228-29 (3d Cir. 1995) ("While it is true that the bankruptcy court did not indicate that it was acting pursuant to S 328(c), . . . we find that the denial of FE & B's fees application may be upheld as an exercise of the bankruptcy court's authority under S 328(c)."); United States v. Sallins, 993 F.2d 344, 346 n.2 (3d Cir. 1993) ("[T]he district court did not state its reason for admitting the evidence. [However], we will assume that the district court believed the evidence was admissible as backgr ound."); United States v. Thomas, 961 F.2d 1110, 1120 (3d Cir . 1992) ("Although the district court did not explicitly state in its written judgment that the foregone fifteen year sentence was a basis for the upward departure, we believe Thomas' firearm possession played a major, if not predominant, role in the court's sentencing decision."); Inmates of the Allegheny County Jail v. Wecht, 901 F.2d 1191, 1198 (3d Cir. 1990) ("Although the district court did not state whether it intended its July 17, 1989 order to be a civil contempt sanction, it is clear from the circumstances that the order is most properly characterized as a coercive civil contempt order entered in a post-permanent injunction proceeding."); Myertech Corp. v. Myertech Corp., 831 F.2d 410, 419 (3d Cir. 1987) ("The bankruptcy judge did not explicitly state under which paragraph of S 2715 he fashioned his remedy; however, we can presume that his calculation was rendered under 2715(b)."); Chirinos de Alvarez v. Creole Petroleum Corp, 613 F.2d 1240, 1244 (3d Cir. 1980) ("Although the court did not clearly state so, it is apparent from a review of its decision that the dismissal was based primarily on the ground that the plaintif fs had not stated a ground upon which relief could be granted.")
3. The court cited numerous avenues that the Government could have pursued to obtain the same information, "which are far less offensive [than] seeking to pierce the attor ney-client privilege." These included subpoenas that the U.S. Attorney's Office choose not to enforce and the Government's failure to insist that a custodian of records confirm the attorney's assertions. The court also noted that compelling his testimony could "unnecessarily `drive a wedge' between a client and his attorney, thereby `chilling' communications."

17

quash a subpoena if it is "unreasonable or oppressive." Presumably, the Majority believes that a finding of "fundamental unfairness" is insufficient to satisfy this standard. In contrast, I fail to see a difference. A subpoena described as "fundamentally unfair" could just as easily be described as "unreasonable and oppressive." Therefore, I believe that the District Court sufficiently invoked the authority of Rule 17(c). Unlike the Majority, I would not reverse based entirely upon an unimportant semantic distinction.4

Assuming the District Court did act under Rule 17(c), we review its decision to quash a grand jury subpoena solely for abuse of discretion. We must "uphold the district court's decision `unless it is clearly arbitrary or without support in the record.' " United States v. Dent, 149 F.3d 180, 191 (3rd Cir. 1998).5 There is nothing in the record to suggest that the District Court's decision to quash the Government's subpoena under these specific facts constituted an abuse of discretion. The court was concerned that enforcing the

_____

4. It is beyond dispute that "unfair," "unreasonable," and "oppressive" are
often used synonymously. A Westlaw searched revealed 1710 federal decisions, 40 of which were Supreme Court decisions, where "unfair" appeared within five words of "unreasonable" or "oppressive." See e.g. Bush v. Gore, 121 S.Ct. 525, 546 (2000) (Ginsburg, J., dissenting) ("Refusing to supplant Illinois law with a federal definition of waiver, we
explained that the state court's declaration `should bind us unless so unfair or unreasonable in its application to those asserting a federal right as to obstruct it.' "); Asahi Metal Co. Ltd. v. Superior Court of California, 480 U.S. 102, 116, 107 S.Ct. 1026, 1034 (1987) (O'Connor, J., concurring) ("[T]he exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair."); Ramseur v. Beyer, 983 F.2d 1215, 1234–35 (3d Cir. 1992) ("We believe that factors such as the nature of the process by which jury lists are composed, the length of time of underrepresentation, and the strength of the evidence that purports to establish an `unfair and unreasonable' representation should be examined under Duren.").

5. See also In re Grand Jury Subpoena , 138 F.3d 442, 444 (1st Cir. 1998); United States v. Chen, 99 F.3d 1495, 1499 (9th Cir. 1996); In re Grand Jury Matters, 751 F.2d 13, 16 (1st Cir. 1984) ("We review a district court decision to quash, or not quash, a grand jury subpoena, solely for abuse of discretion, with much deference being owed to the lower court's authority.").

Government's subpoena would put attorneys in a "very precarious position," subjecting them to grand jury subpoena any time they made representations pertaining to the existence of subpoenaed records. See App. at 172-73 ("I guess the lawyer can't say a word to the U.S. Attorney's office about those things because he'd be subject to coming in to testify as to what his course of knowledge is.").

This threat would certainly chill communication between attorney and client. Both the government and the Majority seem to believe, however, that the attor ney-client privilege is the only means by which a district court can protect that relationship. See Majority Opinion at 11 ("[T]he proper course under Fed. R. Crim P. 17(c) was to rule on whether the lawyer's testimony was protected under the attorney-client privilege."); Appellant's brief at 13-14 ("The only proper substantive limitation on the grand jury's ability to compel [the attorney's] testimony is the attorney-client privilege."). I do not read a district court's discretion so narrowly. American jurisprudence has long r ecognized the central importance of the attorney-client r elationship. The privilege is the most common means of protecting the relationship, but it is not the only one. In appropriate factual situations, such as the present case, a district court can, within its discretion, conclude that a subpoena is unreasonable and oppressive because it har ms the attorney-client relationship, even if the privilege does not apply.

A constant threat of subpoena would also af fect the ability of lawyers to cooperate with the gover nment. The Government contends that "[t]he duty to safeguard `the healthy relationship between the criminal defense bar and the U.S. Attorney's Office' lies squar ely with the parties to that relationship itself, not the district court." Appellant's brief at 52. It appears that the Government misunderstands the court's concern. If a court were to enforce a grand jury subpoena against an attor ney in a case such as this, where there wer e numerous alternative avenues of gathering the desired information, it would impose the threat of subpoena over all r epresentations made by counsel. It does not escape my attention that this would grant the U.S. Attorney's Office tr emendous leverage

19

-- so much in fact that any competent counsel would produce a custodian rather than respond to inquires. See App. at 171-75. This would severely hamper the efficient administration of justice, a matter of paramount concern to this Court.

These consequences might be acceptable (and reasonable) if the Government had no other means of obtaining the desired information. In this case, however, the U.S. Attorney's Office repeatedly served subpoenas that were never enforced, and it failed to insist upon authentication from a custodian of recor ds. As a result, the District Court found that the burden upon the attorney was unreasonable, and I cannot disagree.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

20