**EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION,**

v.

**GUESS?, INC.**

No. 01–MC–205.

United States District Court,
E.D. Pennsylvania.

Dec. 20, 2001.

Cynthia Locke, U.S. Equal Employment, Opportunity Commission, Philadelphia District Office, Philadelphia, PA, for Plaintiff.

Richard S. Meyer, Linda T. Jacobs, Blank Rome Comisky & McCauley, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an action for enforcement of an administrative subpoena issued by the Equal Employment Opportunity Commission (EEOC) to Guess?, Inc., a Pennsylvania corporation with a factory store located in Reading, Pennsylvania. For the reasons outlined below, the petition to enforce shall be granted in part.

### Background

On February 3, 2001, Mr. Quaadir Thornton, a former employee of the respondent, Guess?, Inc., filed a Charge of Discrimination with the Philadelphia Regional Office of the EEOC. According to the Charge, Mr. Thornton was hired as a sales associate in the Mens Wear department of Guess? in June, 2000 at the Reading store. Shortly thereafter, an armed robbery occurred and Mr. Thornton became Guess?, Inc.'s primary suspect. He was placed on suspension pending the outcome of Respondent's investigation on July 26, 2000 and was eventually terminated from his employment on August 31, 2000, ostensibly because of inconsistencies in his employment applications. During the course of the company's investigation into the robbery, Mr. Thornton alleged that he and his co-workers were asked inappropriate racially motivated questions about his association with other black people by the company's investigator, Barry Musupa. Complainant was never questioned nor considered to be a robbery suspect by the local police.

On July 27, 2001, the EEOC sent a notice to Guess?, Inc.'s counsel scheduling a fact finding conference for August 14, 2001 and requesting the production of Mr. Thornton's three original employment applications, the original conviction record printout used to justify Mr. Thornton's termination, the company's discharge/termination of employment policy and the complete investigative file used by the company in its investigation of the July 23, 2000 robbery and in its discharge of the complainant.

On August 2, 2001, the EEOC issued a subpoena *duces tecum* to Guess? seeking the production of those same items listed in its July 27, 2001 notice letter. The subpoena was served on the respondent on August 6, 2001. Guess?, Inc. responded on August 10, 2001, through its counsel, that it would produce copies of Mr. Thornton's applications of February 17, 2000 and June 23, 2000 but that it could not locate a copy of the November 12, 1997 application form. It further indicated that while it did not have a discharge policy, its application forms contained a statement setting forth the instances in which an employee may be subject to dismissal and it agreed to make that available for inspection and copying, along with the complainant's original conviction record.

Guess, Inc., refused, however, to produce its investigative file because it believed that file to be protected by the work product doctrine and/or the attorney-client privilege. According to the respondent, its Loss Prevention Department is responsible for all aspects of the company's security, including investigations of theft with an eye toward recovering stolen merchandise or money. When Loss Prevention conducts an investigation, it produces a report for the company's legal department to review. Guess? therefore took the position that the investigative report and its supporting documentation were prepared in anticipation of litigation and for the purpose of obtaining advice from its counsel and were thus protected by the work product doctrine and attorney-client privilege. On October 26, 2001, the EEOC filed its Application for Order to Show Cause why the subpoena should not be enforced. Guess?, Inc. filed its answer to this petition on November 21st and a hearing was held before the undersigned on December 4, 2001.

### *Discussion*

Title VII of the Civil Rights Act of 1964, as amended, prohibits various employment practices involving discrimination on the basis of race, color, religion, sex, or national origin; the primary responsibility for enforcing Title VII has been entrusted to the EEOC. *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 61–62, 104 S.Ct. 1621, 1627, 80 L.Ed.2d 41 (1984); 42 U.S.C. § 2000e–2, 2000e–3, 2000e–5(a). Under this Act, Congress established an integrated, multistep enforcement procedure which begins when a charge is filed with the EEOC (within 180 days after the occurrence of the allegedly unlawful practice) alleging that an employer has engaged in an unlawful employment practice. *Occidental Life Insurance Co. of California v. E.E.O.C.*, 432 U.S. 355, 359, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977); 42 U.S.C. § 2000e–5(e). Thereafter, the EEOC is required to serve notice of the charge on the employer within ten days of its filing and to then investigate the charge to determine whether there is reasonable cause to believe that it is true. *Id.* If the EEOC finds that there is reasonable cause, it shall endeavor to eliminate any such alleged unlawful employment practice by the informal methods of conference, conciliation, and persuasion. *Id.;* 42 U.S.C. § 2000e–5(a). In the event that conciliation efforts should fail, the Commission is empowered to bring a civil action against the employer. 42 U.S.C. § 2000e–5(f)(1).

Under 42 U.S.C. § 2000e–8(a),

In connection with any investigation of a charge filed under section 2000e–5..., the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered

by this subchapter and is relevant to the charge under investigation.

Under § 2000e–9, "for the purpose of all hearings and investigations conducted by the Commission or its duly authorized agents or agencies, section 161 of Title 29 (governing the Labor Relations Board) shall apply."

That section, in addition to giving the EEOC the right to have access to any evidence of any person being investigated that relates to any matter under investigation, further grants the Commission the power to issue subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in proceedings before it. 29 U.S.C. § 161(1).[1] Section 161(2), in turn, confers upon the U.S. District Courts jurisdiction to issue orders requiring compliance with an EEOC-issued subpoena.[2]

Generally, a district court's role in enforcing administrative subpoenas is limited. *E.E.O.C. v. Lockheed Martin Corporation*, 116 F.3d 110, 113 (4th Cir. 1997). When a court is asked to enforce a Commission subpoena, its responsibility is to satisfy itself that the charge is valid, that the material requested is relevant to the charge and to assess any contentions by the employer that the demand for information is too indefinite or has been made for an illegitimate purpose. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191, 110 S.Ct. 577, 583, 107 L.Ed.2d 571 (1990); *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 72, n. 26, 104 S.Ct. 1621, 1633, n. 26, 80 L.Ed.2d 41 (1984). Stated otherwise, there are three requirements for the enforcement of an administrative subpoena in that it is the government's burden to prove: (1) that the investigation has a legitimate purpose and that the inquiry may be relevant to that purpose; (2) that

---

1. Specifically, that section reads in its entirety:

 The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. Within five days after the service of a subpoena on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpoena if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpoena does not describe with sufficient particularity the evidence whose production is required. Any member of the Board, or any agent or agency designated by the Board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the United States or any Territory or possession thereof, at any designated place of hearing.

2. 29 U.S.C. § 161(2) specifically provides:

 In case of contumacy or refusal to obey a subpoena issued to any person, any district court of the United States or the United States courts of any Territory or possession, within the jurisdiction of which the inquiry is carried on or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides or transacts business, upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the Board, its member, agent or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

the information sought is not already within the government's possession; and (3) that procedures required by the agency issuing the subpoena have been followed. *E.E.O.C. v. University of Pittsburgh,* 643 F.2d 983, 985 (3d Cir.1981).

 The concept of relevancy is construed broadly when a charge is in the investigatory stage. *E.E.O.C. v. Franklin & Marshall College,* 775 F.2d 110, 116 (3d Cir.1985). Since the enactment of Title VII, courts have generously construed the term "relevant" and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer. *E.E.O.C. v. Shell Oil,* 466 U.S. at 68–69, 104 S.Ct. at 1621. Courts will generally defer to an agency's own appraisal of what is relevant so long as it is not obviously wrong. *E.E.O.C. v. Lockheed Martin,* 116 F.3d at 113, citing, *inter alia, FTC v. Invention Submission Corp.,* 965 F.2d 1086, 1089 (D.C.Cir.1992).

In this case, Respondent contends that its investigative file is exempt from the Commission's subpoena power because it is protected by the attorney-client privilege and work product doctrine. It does not appear to be challenging relevancy and, we indeed find that the materials sought are clearly relevant to the EEOC's investigation. Petitioner counter-argues that those privileges have been waived by virtue of the respondent's failure to file a Petition for Revocation of the subpoena pursuant to 29 C.F.R. § 1601.16(b). That regulation states, in pertinent part:

(1) Any person served with a subpoena who intends not to comply shall petition the issuing Director or petition the General Counsel, if the subpoena is issued by a Commissioner, to seek its revocation or modification. Petitions must be mailed to the Director or General Counsel, as appropriate, within five days (excluding Saturdays, Sundays and Federal

legal holidays) after service of the subpoena. . . .

Under Sections 1601.16(c) and (d),

(c) Upon the failure of any person to comply with a subpoena issued under this section, the Commission may utilize the procedures of section 11(2) of the National Labor Relations Act, as amended, 29 U.S.C. § 161(2) to compel enforcement of the subpoena.

(d) If a person who is served with a subpoena does not comply with the subpoena and does not petition for its revocation or modification pursuant to paragraph (b) of this section, the General Counsel or his or her designee may institute proceedings to enforce the subpoena in accordance with the provisions of paragraph (c) of this section. Likewise, if a person who is served with a subpoena petitions for revocation or modification of the subpoena pursuant to paragraph (b), and the Commission issues a final determination upholding all or part of the subpoena, and the person does not comply with the subpoena, the General Counsel or his or her designee may institute proceedings to enforce the subpoena in accordance with paragraph (c) of this section.

From all appearances, the issues of whether the failure to file a petition to revoke or modify an administrative subpoena operates as a waiver of the right to object and whether the foregoing regulation violates 29 U.S.C. § 161 by making the subpoena review process mandatory are both matters of first impression in the Third Circuit. That having been said, however, we find the decision of the U.S. Court of Appeals for the D.C. Circuit in *E.E.O.C. v. Lutheran Social Services,* 186 F.3d 959 (D.C.Cir.1999) to be well-reasoned and persuasive on these issues and we shall therefore follow its rationale.

In that case, Lutheran Social Services (Lutheran) had hired a private law firm to investigate certain accusations against its president contained in two anonymous memoranda. In the course of its investigation, the law firm interviewed numerous current and former employees and board members, promising to keep the contents of the interviews confidential, and eventually prepared a report for Lutheran's Board summarizing the results of its investigation and assessing the potential liability for the president's actions. Based upon this report, Lutheran terminated the president. Some ten months later, the EEOC began investigating sex discrimination complaints filed by two former Lutheran employees. In the course of its investigation, the EEOC requested and then subsequently subpoenaed the law firms' prior investigatory files and report. Lutheran then retained the same law firm to represent it in connection with the EEOC investigation. The firm, acting on Lutheran's behalf, advised the EEOC that it and its client considered the subpoena to be improper as it sought privileged and confidential matter and informing the EEOC that it would not comply. No petition to revoke or modify was ever filed.

■ In finding that the failure to first petition for revocation or modification did not bar the courts from considering Lutheran's privilege arguments, the D.C. Circuit noted the contrast between the statute (29 U.S.C. § 161 where the filing of such a petition was permissive) and the regulation (29 C.F.R. § 1601.16(b) where it was mandatory). The Court went on to observe:

Exhaustion is a jurisdictional prerequisite only when Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision....In contrast, section 11 of the NLRA provides only that parties may petition the Commission to revoke a subpoena on the basis of relevance and particularity; nowhere does section 11 even imply, much less expressly state, that courts lack jurisdiction to hear objections not presented to the Commission....And in the absence of a statute clearly depriving courts of jurisdiction to hear issues not first presented to the agency, we know of no principle of administrative law, *Chevron [U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ] or otherwise, that would permit an agency to do so on its own.

*E.E.O.C. v. Lutheran,* 186 F.3d at 962–963. We likewise conclude, based upon the foregoing reasoning, that Guess?, Inc.'s failure to first petition the Commission for a modification or revocation of its subpoena does not bar it from objecting to the subpoena before this Court on the basis of the attorney-client privilege and the work product doctrine. We turn now to consider the merits of this objection.

■ Worthy of maximum protection, the attorney-client privilege is one of the oldest of the privileges for confidential communications known. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 90 (3d Cir.1992). Communications are said to be protected under the attorney-client privilege when: (1) legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *In re Impounded,* 241 F.3d 308, 316, n. 6 (3d Cir.2001). The attorney-client privilege is designed to en-

courage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice. *Id.* The burden falls upon the party seeking to withhold information on the basis of privilege to make the claim expressly, describing the nature of the documents, communications, or things not produced or disclosed in a manner that will permit other parties to assess the applicability of the privilege. *See,* Fed.R.Civ.P. 26(b)(5).

 Similarly, the doctrine of work product immunity shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 138 (3d Cir.2000), citing *In re Grand Jury (Impounded),* 138 F.3d 978, 981 (3d Cir.1998) quoting *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). A party claiming work-product immunity bears the burden of showing that the materials in question were prepared in the course of preparation for possible litigation. *Id.,* citing, *inter alia, Haines v. Liggett Group, Inc.,* 975 F.2d at 94, quoting *Hickman v. Taylor,* 329 U.S. 495, 505, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Work product prepared in the ordinary course of business is not immune from discovery. If the party asserting the privilege bears its burden of proof, the party seeking production may obtain discovery only upon a showing that the party has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Id.,* citing Fed.R.Civ.P. 26(b)(3).

 In this case, while Guess? has repeatedly argued that its robbery investigative file is protected from disclosure under the attorney-client privilege and the work product doctrine, at no time has it made the claim expressly or described the nature of the documents, communications or things withheld in a manner that would enable either this Court or the EEOC to assess the applicability of the privilege. Indeed, the only information that Respondent has provided is its attorney's assertion that when its loss prevention department conducts an investigation, it produces a report for the legal department to review and that the investigative report and the documentation therein were prepared in anticipation of litigation and for the purpose of seeking advice from legal counsel. It is particularly unclear what litigation Respondent was anticipating at the time it conducted its investigation in July, 2000 given that it has offered nothing in the way of an explanation on this point. We therefore conclude that Guess?, Inc. has failed to meet its burden of demonstrating the applicability of either the attorney-client or work product doctrines to the materials sought here.

 Notwithstanding this failure, however, we recognize that the possibility does exist that the investigative file includes some materials which are indeed privileged and/or protected under the attorney-client privilege and work product doctrine. Accordingly, we shall grant the EEOC's application to enforce its subpoena to Guess? in part and shall direct that the Respondent produce its entire investigative file (or a complete copy thereof) to this Court for *in camera* inspection within ten (10) days of the entry date of the attached order.

An order follows.

### ORDER

AND NOW, this 20th day of December, 2001, upon consideration of the Application

of the Equal Employment Opportunity Commission to Enforce the Subpoena *Duces Tecum* which it served upon Guess?, Inc. on August 6, 2001, it is hereby ORDERED that the Application is GRANTED IN PART and to the extent that it has not already done so, Guess?, Inc. is DIRECTED to produce complete, unredacted copies of the three original employment applications completed by Mr. Quaadir Thornton and the original conviction record printout used in justifying Mr. Thornton's discharge within ten days of the entry date of this Order.

IT IS FURTHER ORDERED that Guess?, Inc. shall produce a complete, unredacted copy of its investigative file, including reports and documentation used for the July 23, 2000 robbery investigation and discharge of Mr. Thornton to this Court for *in camera* review within ten days of the entry date of this Order.