**IN RE GRAND JURY SUBPOENA**
(Served Upon Stephen A. Roach, Esquire). An Anonymous Police Officer, Intervenor, Appellant.

No. 97–2335.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1998.

Decided March 16, 1998.

Thomas M. Hoopes, with whom Hoopes and Cronin and Dana A. Curhan, Boston, MA, were on brief, for intervenor.

Louis E. Peraertz, Attorney, U.S. Dep't of Justice, with whom Bill Lann Lee, Acting Assistant Attorney General, Dennis J. Dimsey, Attorney, U.S. Dep't of Justice, Donald K. Stern, United States Attorney, and S. Theodore Merritt, Assistant United States Attorney, Washington, DC, were on brief, for respondent.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

This appeal requires us to develop a mechanism for modulating the tension that can develop between a protective order in a civil case, *see* Fed.R.Civ.P. 26(c), and a grand jury subpoena seeking evidence that falls within the protective order's compass. The question arises here on appeal from the district court's refusal to quash a grand jury's subpoena duces tecum that demands the production of materials covered, at least in part, by a previously issued civil protective order. The question presented is new to us, and the decisions elsewhere divide over the correct approach. After pondering the problem, we reject the district court's choice of an analytic method, but nevertheless uphold the subpoena.

## I. BACKGROUND

Because of the procedural posture in which this appeal arises, the facts before us afford little expository nourishment. We nonetheless offer the following informational crudité.

On an undetermined date, Michael Cox, an undercover Boston police officer, was, it is said, beaten brutally by a band of uniformed police officers. To redeem this alleged wrong, Cox sued the City of Boston and several individual officers, including the intervenor in this action, whom we shall call Joe Doakes:[1] In short order, the City filed a motion—later joined by Doakes—for a pro-

tective order pursuant to Fed.R.Civ.P. 26(c). The court (Young, U.S.D.J.) granted this request and issued a modifiable order that protected confidential information, defined as including "[a]ny and all Internal Affairs Division [ (IAD) ] records," as well as exhibits or evidence that incorporate any such confidential information. Doakes thereafter gave deposition testimony on three separate occasions between December 29, 1996, and April 7, 1997.

In due season, a federal grand jury initiated an investigation into the attack. On April 4, 1997, the United States moved to intervene in the civil case and to stay discovery. Judge Young granted this motion and, with the consent of all parties, administratively closed the case "until April 1, 1998 or [until] any investigation by the [United States] is completed, whichever comes first."

On September 30, 1997, the grand jury summoned Cox's attorney, Stephen A. Roach. The subpoena duces tecum directed Roach to produce "[a]ll volumes of the deposition, including exhibits, of [Joe Doakes] taken in *Michael Cox v. City of Boston, et al.*" Roach filed a motion requesting the district court to rule whether his compliance with the subpoena would violate the protective order. Citing the administrative closure of the civil case file, Judge Young declined to hear the motion and directed Roach to the district court's emergency calendar. Doakes moved to intervene in the proceedings and the duty judge (Gertner, U.S.D.J.) heard Roach's motion for instructions as well as Doakes's motion to quash the subpoena duces tecum.

In pressing the motion to quash, Doakes's counsel—who had not represented him at the start of the civil case—argued that the protective order safeguarded Doakes's entire deposition (and the exhibits associated therewith) because he had been questioned extensively about his statement to the IAD. After some backing and filling, not now germane, Judge Gertner denied the motion to quash. In fashioning her decision, the judge adopted

---

1. The intervenor originally moved to close the appellate courtroom and to have our opinion issue under seal. We declined to take such extreme measures, but agreed that we would take steps to keep the intervenor's identity confidential. Accordingly, "Joe Doakes" is a pseudonym. All parties have indicated their satisfaction with this arrangement.

the Second Circuit's balancing test, *see Martindell v. International Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir.1979), and determined that, all things considered, the interests of the criminal investigation in this instance outweighed the movant's interest in maintaining the confidentiality of the record (especially since Doakes had demonstrated no prior reliance on the protective order).

## II. ANALYSIS

 We review a district court's fact-based decisions regarding quashal of grand jury subpoenas for abuse of discretion.[2] *See In re Grand Jury Matters*, 751 F.2d 13, 16 (1st Cir.1984). Withal, a court that predicates a discretionary ruling on an erroneous view of the law inevitably abuses its discretion. *See Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996); *United States v. Snyder*, 136 F.3d 65, 70 (1st Cir.1998). Thus, we review de novo whether the court below employed the proper legal formulation in making the decision from which Doakes appeals. *See Snyder*, 136 F.3d at 70; *Soto v. United States*, 11 F.3d 15, 17 (1st Cir.1993).

### A. *Extant Standards.*

The Second Circuit's *Martindell* test strives to balance society's interest in obtaining grand jury evidence for law enforcement purposes with its interest in "the just, speedy, and inexpensive determination of civil disputes ... by encouraging full disclosure of all evidence that might conceivably be relevant." 594 F.2d at 295 (citation and internal quotation marks omitted). In constructing this test, the *Martindell* court exalted civil litigation over criminal prosecution on the theory that a deponent's reliance on a protective order merits respect, and the government's evidence-gathering powers are so sweeping that it ordinarily will be "unnecessary" for prosecutors to go behind civil protective orders. *Id.* at 296. In deference to these considerations, the court declared that, absent a showing of "improvidence in the grant of a Rule 26(c) protective order or

some extraordinary circumstance or compelling need ... a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government." *Id.*

The Second Circuit's rule—positing a presumption in favor of a protective order when such an order clashes with a grand jury subpoena—has received a cool reception elsewhere. The Fourth Circuit declined to follow *Martindell*, holding instead that "the existence of an otherwise valid protective order [is] not sufficient grounds to quash the subpoena duces tecum issued by the ... grand jury." *In re Grand Jury Subpoena*, 836 F.2d 1468, 1478 (4th Cir.1988). The court adopted this per se rule after weighing "the authority of a grand jury to gather evidence in a criminal investigation; the deponents' right against self-incrimination; and the goals of liberal discovery and efficient dispute resolution in civil proceedings." *Id.* at 1471. Calibrating these scales, the court concluded that society's interest in grand jury access to all relevant information overrode any countervailing interest in civil discovery. *See id.* at 1474–75. Two other circuits have joined the fray, both siding with the Fourth Circuit and advocating a per se rule that invariably prefers grand jury subpoenas over civil protective orders. *See In re Grand Jury Subpoena*, 62 F.3d 1222, 1224 (9th Cir.1995); *In re Grand Jury Proceedings*, 995 F.2d 1013, 1020 (11th Cir.1993).

We are uneasy with both of these approaches. Turning first to *Martindell*, we believe that its creation of a presumption favoring the sanctity of civil protective orders tilts the scales in exactly the wrong direction. By establishing a presumption in favor of civil protective orders, *Martindell* fails to pay proper respect to what we deem an issue of great importance: society's profound interest in the thorough investigation of potential criminal wrongdoing. *See Nixon v. Fitzgerald*, 457 U.S. 731, 754 n. 37, 102 S.Ct. 2690, 2703 n. 37, 73 L.Ed.2d 349 (1982) (explaining "that there is a lesser public in-

---

**2.** This appeal does not implicate any Fifth Amendment issues. *See, e.g., In re Grand Jury Subpoenas (Albuquerque Police Dep't)*, 40 F.3d 1096, 1104 (10th Cir.1994) (holding that the

Fifth Amendment does not protect a police officer from the disclosure of internal affairs statements, administratively compelled, to a grand jury).

terest in actions for civil damages than, for example, in criminal prosecutions"). Furthermore, the *Martindell* rule suffers from practical infirmities: the principles by which one court should adjudge a protective order issued by another court "improvidently granted" are difficult to standardize, and the circumstances under which a United States Attorney might demonstrate a "compelling need" are opaque. In short, the *Martindell* rule is ill conceived as a matter of policy.

The Fourth Circuit's per se rule manifests a different vice: inflexibility. Although the per se rule properly privileges the public's interest in law enforcement over its interest in the resolution of civil controversies, it does so without regard to idiosyncratic circumstances. In other words, this approach puts priorities in proper perspective, but overlooks that the balance nonetheless is variable and that the confluence of the relevant interests—generally, those of society at large and of the parties who are seeking to keep a civil protective order inviolate—occasionally may militate in favor of blunting a grand jury's subpoena. Because this per se rule obviates all analysis, it will trench upon legitimate concerns when (even if rarely) a solid case can be made for exceptional treatment. Always bringing overwhelming force to bear may be acceptable military strategy, but the law often requires a more nuanced approach.

### B. *The Modified Per Se Rule.*

■ Regarding both the *Martindell* rule and the per se rule as flawed to some extent, we chart a different course. The proper approach, we think, is along the following lines: A grand jury's subpoena trumps a Rule 26(c) protective order unless the person seeking to avoid the subpoena can demonstrate the existence of exceptional circumstances that clearly favor subordinating the subpoena to the protective order. We believe that this rule offers the desired flexibi-

ty and at the same time allows room for reasoned analysis in a way that does not undermine the public's interest in law enforcement out of a misplaced deference to private parties. *See* Ajit V. Pai, Comment, *Should a Grand Jury Subpoena Override a District Court's Protective Order?*, 64 U. Chi. L.Rev. 317 (1997) (espousing a similar rule).

■ How this presumption in favor of a grand jury subpoena plays out in each individual case will depend upon the particular facts and circumstances. When called upon to adjudicate a motion to quash a grand jury subpoena in the face of a civil protective order, a district court may mull factors such as the government's need for the information (including the availability of other sources), the severity of the contemplated criminal charges, the harm to society should the alleged criminal wrongdoing go unpunished, the interests served by continued maintenance of complete confidentiality in the civil litigation, the value of the protective order to the timely resolution of that litigation, the harm to the party who sought the protective order if the information is revealed to the grand jury, the severity of the harm alleged by the civil-suit plaintiff, and the harm to society and the parties should the encroachment upon the protective order hamper the prosecution or defense of the civil case.[3] In the end, society's interest in the assiduous prosecution of criminal wrongdoing almost always will outweigh its interest in the resolution of a civil matter between private parties, *see, e.g., Nixon*, 457 U.S. at 754 n. 37, 102 S.Ct. at 2703 n. 37, and thus, a civil protective order ordinarily cannot be permitted to sidetrack a grand jury's investigation.[4]

### C. *The Remedy.*

■ We are mindful that the district court, compelled by conflicting precedent to guess at the rule of decision, applied the wrong legal standard. Ordinarily, such a

---

**3.** This list is intended to be illustrative rather than all-encompassing; the district court need not consider every factor we have mentioned in every case, and, by the same token, may add factors as necessary.

**4.** Still, there may be occasional exceptions, and though we eschew any speculation as to what

circumstances might warrant subordinating a grand jury subpoena to a civil protective order, we note that one commentator has ventured some ideas on this subject. *See* Pai, *supra*, at 340–44 (suggesting that perhaps bankruptcies, financial institution insolvencies, mass torts, and the like might merit special consideration).

chain of events counsels in favor of a remand. Yet, when a trial court misperceives the applicable rule of law, remand is not always required. If the record is sufficiently informative and the court has made sufficiently detailed findings, it sometimes is possible for an appellate tribunal to take those findings, marry them to the correct rule of law, and render a decision. *See, e.g., United States v. Pierro*, 32 F.3d 611, 622 (1st Cir.1994); *Societe Des Produits Nestle v. Casa Helvetia, Inc.*, 982 F.2d 633, 640–41, 642 (1st Cir.1992); *United States v. Mora*, 821 F.2d 860, 869 (1st Cir.1987).

■ This is such a case. The record yields all the information a court is likely to need in order to rule upon a motion to quash. In addition, Judge Gertner made certain relevant findings.[5] More importantly, the record is barren of any evidence that would permit a court to find exceptional circumstances, or that might tend to show that the public interest would be served by taking the unusual step of preferring the civil protective order over the grand jury subpoena. The subpoenaed information is highly relevant, the contemplated criminal charges are serious, the need for deterrence is great, the public interest in prosecuting police brutality cases is obvious, and, conversely, a limited incursion on the protective order will neither delay the civil litigation (which is stayed) nor unfairly skew its outcome.

We will not paint the lily. Remand would serve no useful purpose because the record presents insurmountable obstacles for Doakes. Indeed, even though Judge Gertner erroneously used a legal standard much more congenial to Doakes's position—a legal standard which incorrectly presumed that a protective order ordinarily would prevail over a grand jury subpoena—she found that the subpoena should be enforced. As the correct legal standard treats grand jury subpoenas with considerably more respect than the

standard employed below, and as the judge's findings of fact are entirely supportable, the subpoena's survival is assured. We need go no further.

*Affirmed.*

---

5. For instance, Judge Gertner concluded that the protective order—which permits the dissemination of protected materials with "prior permission of the City of Boston" at the end of the civil case—could not reasonably be privileged over the subpoena because it was modifiable to such an extent that no one reasonably should have relied upon it as a buckler against a grand jury

inquiry. She also found that a principal purpose behind the protective order was to avoid interference with the City of Boston's internal investigation, now concluded. Finally, the City did not object to the grand jury subpoena, thereby weakening the aggregate interest in maintaining confidentiality.