

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2002

# In Re: Grand Jury

Precedential or Non-Precedential:

Docket No. 01-4042

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"In Re: Grand Jury " (2002). *2002 Decisions.* Paper 250.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/250

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 5, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4042

IN RE: GRAND JURY

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable Katharine S. Hayden
(D.C. Miscellaneous No. 00-188)

Argued on February 28, 2002

Before: ROTH and FUENTES, Circuit Judges, and
KATZ,* District Judge

(Opinion Filed: April 5, 2002)

Michael B. Himmel [ARGUED]
Robert J. Kipnees
Greenbaum, Rowe, Smith,
Ravin, Davis & Himmel LLP
P.O. Box 5600
Woodbridge, New Jersey 07095

 Counsel for Appellant
John Doe

_____

* Honorable Marvin Katz, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.


Alain Leibman [ARGUED]
Christopher J. Christie
George S. Leone
United States Attorney's Office
970 Broad Street
Newark, New Jersey 07102-2535

 Counsel for Appellee
United States of America

OPINION OF THE COURT

FUENTES, Circuit Judge:

This case requires us to resolve the conflict that arises
when a grand jury subpoena seeks production of evidence
ostensibly shielded by a civil protective order. Appellant is
a target of a grand jury investigation in the District of New
Jersey. The Government seeks to obtain, by way of a grand
jury subpoena, testimony, documents, and other discovery
material given pursuant to a protective order in a pending

civil case. Appellant filed a motion to quash the subpoena on the ground that the protective order barred disclosure of the documents to the Government. The District Court denied Appellant's motion and granted the Government's cross-motion to compel production of the subpoenaed documents.

We hold that a grand jury subpoena supercedes a civil protective order unless the party seeking to avoid the subpoena demonstrates the existence of exceptional circumstances that clearly favor enforcement of the protective order. Appellant cannot meet his burden of establishing exceptional circumstances in this case, and therefore we affirm the order of the District Court denying appellant's motion to quash the subpoena and granting the Government's motion to compel production of the subpoenaed documents.

I.

In 1998, Appellant John Doe and his wife filed a

2

complaint in the Superior Court of New Jersey ("civil case").1 The defendants in this commercial litigation removed the case to the District Court for the District of New Jersey. The parties entered into a Stipulation and Consent Order which was approved by the District Court in March 1999. The order included confidentiality provisions which limited disclosure of deposition transcripts and other documents produced in discovery. The parties agreed that the protective order was designed to avoid public disclosure of sensitive personal and corporate financial information, and that the case did not involve trade secrets or other information which normally enjoys a high level of confidentiality. After Doe added defendants to his case with whom there was no diversity of citizenship, the case was remanded to the New Jersey Superior Court in August 1999.

After remand, a Superior Court judge held a case management conference and entered a Case Management Order in October 1999 which adopted the earlier protective order entered by the District Court. Subsequent to the issuance of the state protective order, depositions, interrogatory answers, and other discovery were taken of Doe and several of his associates. The civil case, which also includes counterclaims against Doe, is still ongoing in state court and currently awaits trial.

Around April 2000, as discovery was ongoing in the civil case, the United States Attorney's Office for the District of New Jersey commenced a grand jury investigation of Doe and his wife into alleged mail fraud, wire fraud, income tax evasion, and falsification of income tax returns. These matters relate to issues raised in the civil case. On May 29, 2001, the grand jury issued a subpoena to Doe's civil case counsel. The subpoena calls for all depositions, related

exhibits, interrogatory answers, and responses to requests
for admissions in the civil case with respect to Doe and

---

1. This case has been submitted under seal pursuant to the order of the
District Court under Federal Rule of Criminal Procedure 6(e)(6).
Therefore, our statement of facts is necessarily brief. "John Doe" is a
pseudonym used to prevent disclosure of any matters before the grand
jury.

3

several other deponents. The parties agree that all the
deposition testimony and other discovery sought by the
subpoena was taken after the case was remanded to state
court and under the state protective order.

Doe filed a motion to intervene and moved to quash the
subpoena issued to his civil counsel on June 27, 2001. The
Government filed a cross-motion to compel compliance with
the subpoena and production of the documents.[2]

The District Court judge presiding over the grand jury
held a hearing on August 14, 2001. In an opinion and order
filed under seal on October 25, 2001, the court denied
Doe's motion to quash and granted the Government's
motion to compel production. In its opinion, the court
noted that a circuit split exists on the question of whether
a protective order may trump a grand jury subpoena and
that this Court has not decided the issue. Without the
benefit of clear guidance from this Court, the District Court
declined to adopt a specific rule, but held that even under
the most "protective" circuit law, the protective order
cannot take precedence if it was improvidently granted. The
court found that the protective orders in this case were
improvidently granted and therefore allowed the grand jury
subpoena to override the protective order.[3] The court also
questioned the extent of the deponents' reliance on the
protective order and found that the public interest did not
justify enforcing the protective order in the face of the
grand jury subpoena.

Doe timely appeals the denial of his motion to quash the
subpoena. With the consent of the Government, the District
Court stayed its order pending expedited appeal to this
Court. We granted the parties' request for expedited appeal
because the grand jury investigation is pending.

---

2. The Government did not oppose Doe's motion to intervene.

3. The District Court held that under our decisions in Glenmede Trust
Co. v. Thompson, 56 F.3d 476 (3d Cir. 1995) and Pansy v. Borough of
Stroudsburg, 23 F.3d 772 (3d Cir. 1994), the protective order was
improperly granted because of the "fatal lack of judicial findings of good
cause" and due to this Court's discouragement of "umbrella" protective
orders. Dist. Ct. Mem. Op. at 10-12.

4

II.

The District Court had jurisdiction under 28 U.S.C.
S 3231 and Fed. R. Crim. P. 17(c) over Doe's motion to
quash the grand jury subpoena and the Government's
motion to compel production. This Court has jurisdiction
over the District Court's order denying Doe's motion and
granting the Government's motion under 28 U.S.C.S 1291.
See In re Grand Jury Proceedings, 604 F.2d 798, 800-01 (3d
Cir. 1979).

Doe challenges the grand jury subpoena as an intervenor
under Federal Rule of Criminal Procedure 17(c), which
states that "[t]he court on motion made promptly may
quash or modify the subpoena if compliance would be
unreasonable or oppressive." The same rule also allows the
court to direct production of subpoenaed documents.

"We review the decision to quash a grand jury subpoena
for abuse of discretion." Impounded, 241 F.3d 308, 312 (3d
Cir. 2001). We have plenary review over the District Court's
interpretation and application of the relevant legal
standards. See Pansy v. Borough of Stroudsburg , 23 F.3d
772, 783-84 (3d Cir. 1994). The District Court's factual
determinations are reviewed for clear error. Impounded, 241
F.3d at 312.

III.

We have not previously addressed whether, and under
what circumstances, a civil protective order may shield
information from a grand jury, but our sister circuits have
developed three different approaches to this problem.4 The

---

4. We note that all the circuit cases discussed here addressed the issue
in the context of protective orders issued by federal courts under Federal
Rule of Civil Procedure 26(c). Here, the initial stipulated protective order
was approved by the District Court, but all the materials sought by the
grand jury were produced under the state court protective order, which
incorporated and adopted the federal order. The interests implicated by
the clash between a protective order and a grand jury subpoena are
substantially the same whether the order was issued under federal or
state law. Therefore, the circuit cases we discuss below are relevant, and
the rule we announce applies to both federal and state protective orders.

Second Circuit has held that, absent a showing of
improvidence in the grant of the protective order, or
extraordinary circumstance or compelling need for the
information, a protective order takes priority over a grand
jury subpoena. Martindell v. International Telephone &
Telegraph Corp., 594 F.2d 291, 296 (2d Cir. 1979). This
presumption in favor of enforcing protective orders against
grand jury subpoenas has been rejected by several courts.
Three courts of appeals have announced a per se  rule that

a grand jury subpoena always trumps a protective order. In re Grand Jury Subpoena Served on Meserve, Mumper & Hughes, 62 F.3d 1222, 1226-27 (9th Cir. 1995); In re Grand Jury Proceedings (Williams), 995 F.2d 1013, 1020 (11th Cir. 1993); In re Grand Jury Subpoena, 836 F.2d 1468, 1477 (4th Cir.), cert. denied, 487 U.S. 1240 (1988). Most recently, the First Circuit declined to adopt either the Second Circuit standard or the per se rule. It instead established a rebuttable presumption in favor of grand jury subpoenas. Under this rule, a grand jury subpoena overrides a protective order unless the party seeking to avoid the subpoena demonstrates the existence of "exceptional circumstances that clearly favor subordinating the subpoena to the protective order." In re Grand Jury Subpoena (Roach), 138 F.3d 442, 445 (1st Cir.), cert. denied, 524 U.S. 939 (1998).5

We benefit from the reasoning of these courts in announcing our rule today. We join the First Circuit in concluding that a strong but rebuttable presumption in favor of a grand jury subpoena best accommodates the sweeping powers of the grand jury and the efficient resolution of civil litigation fostered by protective orders.

A.

In considering the tension between a grand jury subpoena and a civil protective order, we first recognize the "unique role" played by the grand jury in our system of justice. See Impounded, 241 F.3d at 312; see also In re Grand Jury Subpoena, 223 F.3d 213, 216 (3d Cir. 2000)

---

5. At oral argument, the Government urged this Court to adopt the First Circuit's rule.

6

(noting that grand jury is "essential to the federal criminal justice system"). The grand jury is "a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation . . .". Blair v. United States , 250 U.S. 273, 282 (1919). As the Supreme Court has noted, the grand jury is "[r]ooted in long centuries of Anglo-American history" and is "a constitutional fixture in its own right." United States v. Williams, 504 U.S. 36, 47 (1992) (internal quotations and citations omitted).6 It may "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991). Therefore, "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." Id. A subpoena is perhaps the most important of the grand jury's tools of investigation, and its authority to subpoena witnesses "is not only historic, but essential to its task . . . [because] 'the public . . . has a right to every man's evidence,' except for those persons

protected by a constitutional, common-law, or statutory privilege." Branzburg v. Hayes, 408 U.S. 665, 688 (1972) (citations omitted).

Courts exercise limited control over the functioning of the grand jury and extend great deference to this historic institution and its broad powers. See Impounded , 241 F.3d at 312. The grand jury "belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." Williams, 504 U.S. at 47. As we have acknowledged, the grand jury's "great powers of investigation and inquisition" allow it to " 'compel the production of evidence or testimony of witnesses . . . unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.' " In re Grand Jury Subpoena, 223 F.3d at 216 (quoting

_____

6. "In this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury.' " United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted).

7

United States v. Calandra, 414 U.S. 338, 343 (1974)). While courts have some authority to limit the grand jury's power, see Impounded, 241 F.3d at 312-13, the Supreme Court has stated that "[g]iven the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." Williams, 504 U.S. at 49-50.

A civil protective order also serves important interests. Protective orders, authorized under federal law by Federal Rule of Civil Procedure 26(c) and by analogous provisions in state rules, are intended " 'to secure the just, speedy, and inexpensive determination' of civil disputes . . . by encouraging full disclosure of all evidence that might conceivably be relevant." Martindell, 594 F.2d at 295 (quoting Fed. R. Civ. P. 1). By shielding sensitive information from third parties and the public at large, protective orders "offer litigants a measure of privacy" and "aid the progression of litigation and facilitate settlements." Pansy, 23 F.3d at 786.

B.

We ultimately conclude, however, that absent exceptional circumstances, protective orders should not serve to interfere with the unique and essential mechanism of a grand jury investigation. Other courts have rejected the Second Circuit's rule favoring protective orders because that test "tilts the scales in exactly the wrong direction" by "failing to pay proper respect" to the grand jury and its powers. See In re Grand Jury Subpoena (Roach) , 138 F.3d at 444; see also In re Grand Jury Subpoena Served on

Meserve, Mumper & Hughes, 62 F.3d at 1226 ("[A]llowing protective orders to be enforced at the expense of grand jury subpoenas would yield little benefit, at great cost."); In re Grand Jury Proceedings (Williams), 995 F.2d at 1017 ("Permitting witnesses to rely on civil protective orders to keep information from a criminal investigation disrupts the essential grand jury process and threatens the grand jury's independence from the judiciary."); In re Grand Jury Subpoena, 836 F.2d at 1475 ("A civil protective order may seriously impede a criminal investigation by a grand jury.").

8

While protective orders are in many cases very important facilitating devices, they are not, as the Second Circuit describes them, part of the "cornerstone of our administration of civil justice," and should almost always yield in the face of a grand jury subpoena. See Martindell, 594 F.2d at 295.

The grand jury itself is a "cornerstone" of our justice system. The Fourth Circuit has cataloged the ways in which a protective order may improperly intrude upon the grand jury's functioning:

> Uncoerced testimony given in a civil action may provide important and relevant information to a grand jury investigation. In addition, the government has an interest in obtaining this information for purposes of impeachment should the deponents testify in a manner materially inconsistent with their deposition testimony in any future criminal trial. Finally, protective orders may cause the absurd result of shielding deponents from prosecutions for perjury because, while evidence of perjury would certainly be cause for modifying a protective order, the protective order itself impedes an investigation that might lead to cause for believing that perjury has occurred.

In re Grand Jury Subpoena, 836 F.2d at 1475.

It is true that under its broad powers, the grand jury may obtain evidence by means other than subpoenaing civil discovery materials. For example, it may subpoena witnesses directly, and the Government could grant these witnesses immunity if they refuse to testify. Yet in almost all cases, the grand jury should not be forced to resort to these imperfect alternatives when relevant evidence may be found in civil discovery materials. Because we give great deference to the grand jury's investigatory methods, we hesitate to dictate which methods may properly be employed. In many cases, the relevant witnesses are themselves targets of the grand jury probe and therefore a subpoena would not yield the required information because the witnesses would likely assert their Fifth Amendment privilege against self-incrimination. Allowing a protective order to prevail could all too often frustrate the grand jury's

9

constitutionally and historically protected mission. We do not wish to allow protective orders, designed to facilitate private civil litigation, instead to delay criminal investigations which advance the public interest.

However, allowing a grand jury subpoena to override a protective order could encourage civil deponents to assert their Fifth Amendment privilege. This "may disrupt or thwart civil litigation and discovery in a wide variety of cases." Id. at 1473. Yet we agree with the Fourth Circuit that a protective order "cannot effectively deal in all instances with the problems posed by civil litigants who plead the fifth amendment during pretrial discovery," so it is "not therefore a substitute for invocation of the privilege, and it should not be afforded that status." Id. at 1475. We have held that "reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits." S.E.C. v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). Therefore, concern for the Fifth Amendment right of a deponent "[does] not require, nor may it depend on, the shield of civil protective orders." In re Grand Jury Subpoena, 836 F.2d at 1471.

Furthermore, the Fourth Circuit has outlined several ways by which a court may "ensure [the] successful resolution of a civil action which is threatened by a deponent's privileged silence." See id. at 1476. These methods to facilitate efficient discovery include: 1) delaying discovery until any pending grand jury investigation has been completed; 2) conducting a pretrial hearing to expose any non-meritorious assertions of the Fifth Amendment privilege; 3) shifting the burden of proof to the privilege-asserting party who is in the best position to provide relevant proof and whose invocation of the privilege "contributed substantially to a party's failure of proof "; and 4) excluding testimony given at trial if the same testimony had been withheld during discovery under an assertion of privilege. See id.; see also In re Grand Jury Proceedings (Williams), 995 F.2d at 1018 n.11 (noting several "precautions" that may be taken to protect civil plaintiffs fearing criminal prosecution against self-incrimination).

10

A protective order is an important device, but it is also a limited one, and is subject to modification. See , e.g., Pansy, 23 F.3d at 789-91 (establishing test for modification of protective orders). As the Fourth Circuit has noted:

> Even with a protective order in place, incriminating statements still create the risk that parties to a civil action will leak sealed information or materials to relevant law enforcement authorities. In the event of a leak, . . . a protective order, unlike a grant of immunity, provides no assurance that incriminating statements will not be used against a deponent in a

> criminal proceeding or that the statements will not be
> used to obtain other relevant evidence. Moreover, a
> protective order . . . is normally subject to modification
> under Rule 26 for sufficient cause.

In re Grand Jury Subpoena, 836 F.2d at 1476. A protective
order often "cannot serve as more than a stopgap measure
. . . [because] incriminating information will normally be
disclosed at trial even if the information is effectively
suppressed prior to that time." Id. Protective orders are
limited instruments that are quite useful in facilitating the
efficient disposition of litigation in the many civil cases that
involve potentially embarrassing facts or sensitive
commercial or other private information. Yet deponents who
have reason to fear not just embarrassment or economic
disadvantage, but possible criminal charges as well, should
be aware that a protective order alone cannot protect them
from a grand jury investigation.

Arguing for adoption of an approach akin to the Second
Circuit's Martindell rule, Doe asserts that the Government
may overcome that rule's presumption in favor of the
protective order by demonstrating "compelling need" for the
subpoenaed information, and therefore the harm to the
esteemed role and powers of the grand jury is slight. He
further contends that any impediment to the grand jury's
investigation posed by quashing the subpoena can be
avoided by compelling the witnesses themselves to testify,
and if the witnesses elect to assert their Fifth Amendment
privilege, the Government could then grant them immunity.
This argument, however, does not account for the
consequences that would ensue if the Government declines

11

to grant immunity. Such consequences would likely occur
in cases such as Doe's where the witness himself is the
target of the grand jury probe. In addition, such a high and
exacting standard as "compelling need" simply does not
comport with the wide-reaching powers of the grand jury
and the judicial deference shown those powers.7

IV.

In the vast majority of cases, a protective order should
yield to a grand jury subpoena. On the other hand, we also
understand that on very rare occasions, the public interest
in speedy resolution of private civil litigation could outweigh
the strong public interest in favor of prosecution of criminal
wrongdoing. The per se approach, adopted by three of our
sister circuits and under which a grand jury subpoena
always trumps a protective order, defers to the sweeping
powers of the grand jury, but does so at the expense of
flexibility. It also forecloses enforcement of a protective
order in the exceptional case in which the public interest
demands that the civil litigation take priority over any
criminal investigation. Such a rigid test ignores
"idiosyncratic circumstances" and fails to understand that
"the confluence of the relevant interests -- generally, those

of society at large and of the parties who are seeking to keep a civil protective order inviolate -- occasionally may militate in favor of blunting a grand jury's subpoena." In re Grand Jury Subpoena (Roach), 138 F.3d at 445.

_____

7. Our view of Martindell is strengthened by our prior disapproval of the Second Circuit's standard in a related context. We considered the standard for modification of a protective order by a non-Government party in Pansy, and we particularly focused on the weight that should be given to the parties' reliance in determining whether to modify a protective order. The Second Circuit test (which applies to all attempts to modify a protective order) makes the parties' reliance dispositive, as such reliance forms the underlying policy rationale for its strong presumption in favor of protective orders. We joined many other courts of appeals in rejecting the Second Circuit approach as "too stringent." See Pansy, 23 F.3d at 789-90 (citing cases from other circuits). Instead, we considered the parties' reliance as merely one non-dispositive factor in a balancing test. See id. at 790. Here, where modification is sought by way of a grand jury subpoena, the reasons for rejecting the Martindell rule as far "too stringent" are even more compelling.

12

We therefore join the First Circuit in establishing a strong presumption that a grand jury subpoena supercedes a protective order. The party seeking to avoid the subpoena may rebut that presumption only by showing the existence of exceptional circumstances that clearly favor enforcing the protective order against the grand jury subpoena.

A court's assessment of whether a party has shown exceptional circumstances requires a case-by-case analysis of the relevant facts, and is not susceptible to easy generalization. The First Circuit outlined several factors for courts to consider in determining whether "exceptional circumstances" exist. These factors include: 1) the government's need for the information (including the availability of other sources); 2) the severity of the contemplated criminal charges; 3) the harm to society should the alleged criminal wrongdoing go unpunished; 4) the interests served by continued maintenance of complete confidentiality in the civil litigation; 5) the value of the protective order to the timely resolution of that litigation; 6) the harm to the party who sought the protective order if the information is revealed to the grand jury; 7) the severity of the harm alleged by the civil-suit plaintiff; and 8) the harm to society and the parties should the encroachment upon the protective order hamper the prosecution or defense of the civil case. Id. at 445. We find these factors to be quite helpful and we adopt them today. We stress, however, that this list is not exhaustive; a district court need not weigh every one of these factors, and it may consider additional factors as the circumstances warrant.

We cannot overemphasize that the presumption we announce today in favor of a grand jury subpoena may only be rebutted in the rarest and most important of cases. As the First Circuit stated, "[i]n the end, society's interest in

the assiduous prosecution of criminal wrongdoing almost always will outweigh its interest in the resolution of a civil matter between private parties . . . and thus, a civil protective order ordinarily cannot be permitted to sidetrack a grand jury's investigation." Id. (citations omitted) (emphasis added).

In a University of Chicago Law Review article which proposed a similar rule and upon which the First Circuit

relied, the author offered several illustrative examples of the kinds of exceptional cases which might warrant enforcing a protective order against a grand jury subpoena. See Ajit V. Pai, Comment, Should a Grand Jury Subpoena Override a District Court's Protective Order?, 64 U. Chi. L.Rev. 317, 336-39 (1997). Pai proposed that a large bankruptcy case of major national importance, one which requires swift resolution to serve the broader interests of many creditors and thousands of employees' jobs, might justify enforcing a civil protective order against a grand jury subpoena. Id. at 337. In such a case, confidentiality could be essential to ensuring that the parties are forthcoming and the public interest is served. Pai also suggested cases involving a failed savings and loan or other financial institution, ones in which the public interest in settling the institution's affairs and avoiding a costly government bailout might outweigh the prosecutorial interest. Id. at 338. Mass tort litigation, in which interfering with discovery could threaten awards of compensation for thousands of plaintiff victims, could also present a scenario in which the interests served by the protective order could prevail. Id. These examples make clear that only in cases in which the public interest in resolving the civil litigation is overwhelming should courts consider overriding a grand jury subpoena.

We recognize that the exceptional circumstances rule sacrifices some of the certainty which forms one of the most attractive features of the per se rule. However, we do not wish to eliminate any possibility of a court exercising its discretion in an extraordinary case. In the vast majority of cases, a grand jury subpoena should prevail. Almost always, the public interest in investigating criminal misconduct will outweigh the public interest in facilitating private civil litigation. As the Government conceded at oral argument, however, the per se rule's inherent inflexibility fails to allow for the truly exceptional case in which quashing the grand jury subpoena would be appropriate.

Finally, we share the concerns of the courts that have approved the per se rule that allowing a protective order to trump a grand jury subpoena, even in only the rarest of cases, could amount to a virtual grant of immunity and could thereby encroach upon the exclusive power of the

United States Attorney, under 18 U.S.C. S 6003, to issue grants of immunity. See In re Grand Jury Proceedings (Williams), 995 F.2d at 1018 (commenting that"[w]hile a district court can issue Rule 26(c) protective orders to encourage the full disclosure of relevant evidence, it cannot impinge upon the authority of the Executive Branch to decide who is to be accorded use immunity"); In re Grand Jury Subpoena, 836 F.2d at 1475 (noting that enforcing a protective order against a grand jury subpoena would "usurp the proper authority of the executive branch to balance the public interest in confidentiality against the interest in effective criminal investigation").

Our worry is alleviated because again, in almost all cases, the grand jury subpoena should prevail. We acknowledge that enforcing a protective order grants a certain degree of quasi-immunity to a deponent, because application of the protective order denies the grand jury access to statements made by the deponent, and the deponent would likely assert his Fifth Amendment privilege if subpoenaed directly. Yet a protective order is no substitute for immunity because, as we have discussed above, a protective order is inherently modifiable and does not prevent the Government from prosecuting the deponent through evidence obtained by other means. Just because the grand jury might hypothetically obtain the evidence from other available sources does not mean that it should have to resort to such imperfect alternatives. But because these potential alternatives exist, allowing a protective order to quash a grand jury subpoena in a truly exceptional case would not bar any prosecution such that enforcement of the protective order would rise to the level of a de facto grant of immunity. Concern with the scope of judicial power ultimately does not dissuade us from allowing some slight flexibility and entertaining the possibility that a protective order might prevail in an exceptional case.

We therefore hold that a rebuttable presumption exists in favor of grand jury subpoenas when they conflict with civil protective orders. Unless the party seeking to avoid the subpoena can demonstrate the existence of exceptional circumstances that clearly favor the enforcement of the protective order, the grand jury subpoena will supercede. A

15

district court should examine the facts of each case to determine whether exceptional circumstances have been shown to exist, while understanding that, in almost all cases, the grand jury subpoena should trump a civil protective order.

V.

In this case, we presume that the grand jury subpoena issued to Doe's civil counsel for deposition transcripts and other discovery materials trumps the protective order under which this evidence was produced. Doe has the burden of showing the existence of exceptional circumstances that

clearly favor rebutting the presumption and enforcing the protective order against the grand jury subpoena.

Although we review the District Court's decision whether to quash the subpoena for abuse of discretion, our review over the District Court's application of the legal standard is plenary. See Pansy, 23 F.3d at 783-84. We need not remand this case for further consideration by the District Court and thereby further delay the pending grand jury investigation. Because the record is sufficient, we may ourselves assess whether Doe can show exceptional circumstances. In any event, the District Court's opinion included analysis quite similar to that required by the exceptional circumstances test. Although the District Court decided this case without the guidance of a clear rule from this Court, it expressly held that the public interest would not be served by enforcing the protective order because "[t]here is certainly no public interest in protecting the personal financial dealings of the [Does] in the face of a criminal investigation." Dist. Ct. Mem. Op. at 12.

We agree. Upon consideration of the facts of this case in light of the non-exhaustive factors adopted above, we conclude that Doe cannot overcome the presumption against enforcing the protective order against the grand jury subpoena. The Government's need for the subpoenaed information is significant. Therefore, allowing the protective order to prevail could frustrate the grand jury's power to obtain evidence. The contemplated criminal charges being investigated by the grand jury are severe; the potential

16

harm to society in allowing extensive tax evasion and fraud, and the illegal diversion of large amounts of money, without punishment, is certainly substantial. The value of the protective order to the timely resolution of the civil case is limited at best. Discovery appears mostly complete, and the civil case now awaits trial. Therefore, the protective order's value in facilitating discovery has significantly diminished, and the protected information will likely be disclosed at trial in any event. Doe may be harmed if his personal and corporate financial information is revealed to the grand jury, but because grand jury proceedings are secret, this information will not become public and risk the burden and embarrassment to Doe that protective orders are meant to avoid. Rather, any harm would result instead from the potentially self-incriminating statements contained in the subpoenaed materials. Protective orders do not serve to protect Fifth Amendment interests; any harm to such interests is comparatively slight.

Counsel for Doe asserted at oral argument that exceptional circumstances are present here because Doe is a target of the grand jury investigation which led to the subpoena. Yet, if this suffices to show exceptional circumstances, then exceptional circumstances may be found in every case. We refuse to allow "exceptional circumstances" to swallow the presumption in favor of

grand jury subpoenas. Doe also contends that the Government does not have a compelling need for the subpoenaed information because it has other available sources for the information. Government need, whether it be "compelling" or otherwise, is not dispositive. It is simply one potential factor in the analysis. We have rejected the Second Circuit's Martindell rule partly because it placed an improper burden of showing compelling need on the Government.

The public interest in enforcing the protective order and facilitating the civil litigation simply does not outweigh the public interest in prosecuting potential criminal behavior in this case. As we stressed above, a grand jury subpoena should almost always trump a protective order, and we find no reason to rebut that strong presumption in this private commercial dispute. Doe cannot show exceptional

17

circumstances that clearly favor subordinating the subpoena to the protective order.

VI.

In conclusion, we hold that a grand jury subpoena supercedes a protective order unless the party seeking to quash the subpoena can demonstrate exceptional circumstances that clearly favor subordinating the subpoena to the protective order. Doe cannot make such a showing of exceptional circumstances. Therefore, we will affirm the District Court's denial of Doe's motion to quash the subpoena and its grant of the Government's motion to compel production.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

18