570 A.2d 1049

JANUSZ CZUJ, PLAINTIFF, v. TORESCO ENTERPRISES, D/B/A/, AUTOLAND AND FORD MOTOR COMPANY, DEFENDANTS.

Superior Court of New Jersey
Law Division Union County

Decided November 17, 1989.

*David E. Sherman,* for plaintiff (*Howard Schwartz,* attorney).

*James S. Dobis,* for defendants (*Dobis & Reilly,* attorneys).

MENZA, J.S.C.

This issue in this case is whether an admission of fact made by an attorney during the course of settlement negotiations is admissible against his client.

This issue has not been decided by the New Jersey courts. Plaintiff's attorney moves to quash a subpoena *ad testificandum* served upon him by defendant. Plaintiff, who purchased an automobile from defendant, Toresco Enterprises, doing business as Autoland, has brought suit under the Lemon Law, *N.J.S.A.* 56:12–29 *et seq.,* against Toresco and others, claiming that the automobile is defective.

Prior to instituting suit, plaintiff's attorney had engaged in settlement negotiations with defendants. At one point during the negotiations period, there was a road test of the vehicle, which took place in the presence of plaintiff's attorney and

representatives of defendant. During the road test, plaintiff's attorney allegedly stated that "the vehicle appears to be operating fine." The negotiations broke down and plaintiff then instituted suit. Defendants thereafter served a subpoena *ad testificandum* upon plaintiff's attorney seeking his appearance at depositions. The purpose of the deposition was to obtain a recitation on the record of the attorney's statement that "the vehicle appears to be operating fine." The attorney now moves to quash the subpoena. He contends that the statement, if made, is inadmissible because it was made during the course of settlement negotiations. The New Jersey *Rules of Evidence* provide:

> Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money, or any other thing, act or service to another who has sustained or claimed to have sustained loss or damage, is inadmissible to prove his liability for the loss or damage or any part of it. [*Evid.R.* 52(1) (Anno.1989)]

The basis for the inadmissibility of offers to compromise is stated in the comments to the rule:

> There are two alternate theories underlying the exclusionary principle of Rule 52(1) ... First, it may be questioned whether evidence that a person has either furnished or offered or promised to furnish consideration to compromise a claim is relevant to the question of the person's liability. Economically, a defendant may come out better if he pays some money for a release at the start of a case than if he emerges successful after trial. A person may merely be buying peace of mind when he compromises a claim; he just may not want to pursue the matter even though he is convinced of his non-liability.

> . . . .

> The other theory supporting the exclusionary principle of Rule 52(1) is founded upon social policy. It is this view which is said to have been adopted by the Uniform Rules of Evidence, from which Rule 52 is taken.... The law favors and encourages amicable out-of-court settlements of disputes. For that reason the law chooses not to recognize settlements and settlement offers as admissions of liability. [*Rules of Evidence, supra,* Comment R. 52(1) at 455]

The New Jersey Supreme Court Committee on Evidence stated:

> It is intended by Rule 52 that statements made during negotiations may not be admissible as admissions (citation omitted). *The policy of Rule 52, to be totally*

*effective, should include such situations.* [Report of the New Jersey Supreme Court Committee on Evidence (March 1963) at 99; emphasis supplied]

The current rule makes no mention of admissions of liability which are made during the course of settlement negotiations. The comment to the rule states:

A situation not specifically covered by Rule 52(1) comes into play when in the course of a defendant's settlement offer, he makes an admission of liability. Should the admissions made during the course of negotiations be admissible as evidence of liability even though an offer of settlement would not be? The question is apparently undecided in New Jersey. [*Rules of Evidence, supra* at 458]

Historically, admissions of fact made during the course of settlement negotiations have been held to be admissible unless couched in hypothetical terms or expressed as being made "without prejudice."

The courts have ... usually held that a specific admission of fact made during the course of settlement negotiations is admissible ... on the ground that such statements are relevant if intended to have been made as statements of fact. (1967).

. . . .

Implicit in such cases is the conclusion that the public policy which protects litigants in the compromise of their disputes must bow before the stronger public policy which requires that issues of fact be determined on the basis of the greatest amount of relevant non-prejudicial testimony. [15 *A.L.R.*3d 13, 17–19 (1967)]

Professor McCormick suggests that such statements should not be admissible:

This traditional doctrine of denying the protection of the exclusionary rule to statements of fact has had serious drawbacks, however. It has tended to discourage freedom of communication in attempting compromise, and taken with its exceptions, it has involved difficulties of application. As a result, the trend is to extend the protection to all statements made in compromise negotiations, either by decision or by rule. [*McCormick, Evidence,* (3 ed. 1984), § 274 at 81]

The *Federal Rules of Evidence* reflect this trend and specifically exclude admissions made during the course of settlement negotiations:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not

admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. [*Fed.Evid.R.* 408]

The rationale for the federal rule is set forth in the note of the Advisory Committee:

The practical value of the common law rule has been greatly diminished by its inapplicability to admissions of fact, even though made in the course of compromise negotiations, unless hypothetical, stated to be "without prejudice," or so connected with the offer as to be inseparable from it.... An inevitable effect is to inhibit freedom of communication with respect to compromise, even among lawyers. Another effect is the generation of controversy over whether a given statement falls within or without the protected area. These considerations account for the expansion of the rule herewith to include evidence of conduct or statements made in compromise negotiations, as well as the offer or completed compromise itself. [*Fed.Evid.R.* 408, Advisory Committee's Notes]

In *Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 606 *P.*2d 944 (Sup.Ct.1980), the Idaho Supreme Court stated:

[t]he position that evidence of such [compromise] offers should not be admissible ... proceeds upon one of two theories.... [T]he first simply denies the relevance of such offers as bearing on the issue of liability.

. . . .

The second theory looks not to relevancy, but to a privilege for settlement negotiations.

. . . .

The modern approach is to exclude all statements made in the course of settlement negotiations. This is the position adopted by the Federal Rules of Evidence.

. . . .

This position has also been widely recommended by the commentators, *e.g.,* Cleary (ed.), *McCormick on Evidence,* § 274, p. 664 (2d ed. 1972); McCormick, *Evidence,* § 76 (1954); Weinstein and Berger, *Weinstein's Evidence,* § 408(02), pp. 408-14 to 408-19 (1979); 2 Louisell and Mueller, *Federal Evidence,* § 170, pp. 271-3 (1978); Bell, *Handbook of Evidence for the Idaho Lawyer,* 78-9 (2d ed. 1972).

Because of its encouragement of settlement negotiations, the Federal Rule's blanket prohibition is the best position on the question, and the one we adopt. [*Id.* 606 *P.*2d at 949-950]

A Texas law review article has this to say regarding the admissibility of statements:

> The probative value of such admissions is questionable. The collateral admission should be excluded, even though relevant, in order to foster and give real protection to settlement negotiations. To ask parties to negotiate away their differences under conditions which compel them to state their positions in hypothetical or conditional form is so unrealistic that it borders on the farcical. Infusing reserve and dissimulation, uneasiness, suspicion, and fear into negotiations vitiates any policy of encouragement. (Bell, "Admissions Arising Out of Compromise—Are They Irrelevant?," 31 *Tex.L.Rev.* 239, 257 (1953)]

This is the better view.

The rule which prohibits the admission of offers to compromise is founded on the social goal of encouraging settlements and recognizes that unhampered free communication is necessary in order to effectuate that goal. Admitting into evidence statements of fact made during the course of settlement negotiations restricts this free communication and undermines the purpose of the rule.

It is, therefore, this court's opinion that statements of fact made during settlement negotiations are not admissible.

It is to be noted that there is another reason why the statement made by the attorney should not be admitted into evidence, and that is that the attorney's statement that "the vehicle appears to be operating fine," was not made within the scope of authority given to him by his client. As stated in *McCormick:*

> If an attorney is employed to manage a party's conduct of a lawsuit he has *prima facie* authority to make relevant judicial admissions by pleadings, by oral or written stipulations, or by formal opening statement, which unless allowed to be withdrawn are conclusive in the case. Such formal and conclusive admissions should be, and are, framed with care and circumspection, and in a leading English case, these admissions are contrasted with an attorney's oral out-of-court statement, and the latter characterized as "merely a loose conversation," and it is often said that the client is not "bound" by the "casual" statements of his attorney out of court.
>
> . . . .
>
> The later cases, properly it seems, measure the authority of the attorney to make out-of-court admissions by the same tests of express or implied authority as would be applied to other agents. [*McCormick, supra,* § 267 at 791]

As stated in *Wigmore:*

Whether a pleading of the now opponent in another suit is receivable as an admission is a question that has led to surprising variety of opinion.

. . . .

In the first place, an *attorney* is not a person whose admissions may be used against the party-client, except so far as concerns the *management of the litigation;* and this principle applies equally to the quasi admissions here concerned and to the solemn admissions.... The reason for this limitation is that the attorney's admissions can affect his client so far only as he has authority to act as an agent in his client's place.... That authority, so far as it is to be implied from the mere general appointment as attorney, and has not been enlarged in the particular case, extends only to the management of the cause. [4 *Wigmore, Evidence* (Chadbourne rev. 1972), § 1063 at 63; emphasis supplied]

. . . .

Bell, J. in *Truby v. Seybert,* 12 *Pa.* 101, 105, (1849): The concessions of attorneys of record bind their clients in all matters relating to the trial and progress of the cause.... [But] it has been ruled that what an attorney says in the course of casual conversation, relating to the controversy, is not evidence. The reason of the distinction is found in the nature and extent of the authority given; the attorney being constituted for the management of the cause in Court, and in England for nothing else. [*Id.* at 67]

It is a stretch of reason to conclude that a statement by plaintiff's attorney which, in effect, asserts that plaintiff has no claim, made in a settlement environment in which plaintiff is seeking compensation for that very same claim, can, in common sense, be considered as having been made within the scope of the attorney's authority.

Plaintiff's motion to quash defendants' subpoena *ad testificandum* is granted.