845 A.2d 732 (2002)
368 N.J. Super. 256
LLERENA, Plaintiff,
v.
J.B. HANAUER & CO. and Alexander Altman, Defendants.
Superior Court of New Jersey, Law Division, Sussex County.
Decided August 2, 2002.
*733 John V. McDermott, Jr., Vernon, for plaintiff.
*734 Zulima V. Farber, Roseland, for defendant J.B. Hanauer & Co. (Lowenstein Sandler, attorneys).
Donald S. Barth, Newark, for defendant Altman (Epstein Becker & Green, attorneys).
GRAVES, J.S.C.
At issue is whether the court should compel the discovery of the terms of a confidential settlement agreement entered into between defendant J.B. Hanauer & Co. (JBH) and Anne Marie Dodrill, a former employee, for use in the present litigation. There is no New Jersey decision addressing this precise issue. For the reasons that follow, plaintiff's application to compel disclosure of the settlement agreement is granted, subject to a limiting protective order.
The pertinent facts may be summarized as follows: plaintiff formerly was employed by JBH at its Parsippany office. Plaintiff alleges that throughout her employment with JBH, she worked in the same room as other JBH employees, referred to as "brokers" or "bond traders," who "engaged in sexually harassing conduct, sexually discriminating conduct, gender discrimination, and discrimination based upon national origin and ancestry." Plaintiff also contends that JBH's executive officers, including "the chief executive officer, chief financial officer, supervisor, and branch manager," had offices immediately adjacent to the brokers and "were able to hear the aforesaid vile, vulgar, disgusting, and sexually harassing language coming from the `brokers' or `bond traders'" but "failed to make any serious or significant attempt to stop such conduct and verbal harassment."
Moreover, plaintiff alleges that on August 30, 2000, at approximately 12:30 p.m., while she was seated at a table in the cafeteria of JBH's Parsippany office with several other employees, defendant Alexander Altman "told her she looked so young to have so many children," and then the following exchange took place:
Altman: Olga, by the way, what nationality are you?
Plaintiff: Cuban.
Altman: Oh, that explains it, all you Cubans do is f* * * like rabbits and eat white rice.
Plaintiff contends that Altman repeated the remarks a second time. At his deposition, Altman admitted to making the remarks.
Plaintiff filed suit against Altman and JBH alleging that the remarks, language and statements "spoken by the traders and bond dealers over the course of her employment made her feel so degraded that she became mentally and physically sick and, as a result of that, she was constructively discharged." In the first count of her complaint, plaintiff claims that she was subjected to sexual harassment, gender discrimination, and a hostile work environment in violation of the New Jersey Law Against Discrimination (LAD). The second count of plaintiff's complaint seeks compensatory and punitive damages for the intentional infliction of emotional distress.
On April 1, 1999, Anne Marie Dodrill, a former employee of JBH's Princeton office who is otherwise unrelated to the present matter, filed suit in the United States District Court for the District of New Jersey against JBH alleging acts of "sexual harassment, sex-based discrimination, retaliatory practices and other improper conduct" in violation of Title VII of the Civil Rights Act of 1964 and the LAD. A Stipulation of Dismissal with Prejudice disposing of the matter was executed by counsel for JBH on December 6, 1999, and counsel for Ms. Dodrill on December 13, *735 1999. Mr. McDermott, plaintiff's counsel, contacted the attorney who represented Ms. Dodrill in the federal court action to ascertain the outcome of that litigation and was advised that the parties had entered into a confidential settlement agreement. Mr. McDermott also provided Ms. Dodrill's counsel notice of this pending application. In a letter to the court dated June 21, 2002, Sidney L. Gold, Esq., who represented Ms. Dodrill in her lawsuit, stated:
This letter is being written pursuant to a representation made by John V. McDermott, Jr., Esquire, that the Court desired our input with regard to the Plaintiff's pending motion to compel disclosure of the terms of the Settlement Agreement. Accordingly, this is to advise that Ms. Dodrill entered into a confidentiality agreement with JB Hanauer and cannot disclose the terms of the Agreement.
Counsel for JBH submitted a copy of the Dodrill settlement agreement to the court to allow for an in camera review and determination prior to the release of any information to plaintiff. See Terrell v. Schweitzer-Mauduit Int'l, 352 N.J.Super. 109, 799 A.2d 667 (App.Div.2002) (trial court erred in releasing confidential information to plaintiff submitted by employer for in camera review without notice to employer).
Plaintiff seeks disclosure of the terms of the Dodrill litigation, asserting that "in pursuing her lawsuit, plaintiff is acting in the public interest to help eliminate the discrimination and hostile work environment maintained by defendant Hanauer." JBH contends that "production of settlement documents and information for evidentiary purposes in an unrelated matter would run afoul of this State's strong public policy favoring and encouraging settlements."
N.J.S.A. 10:5-12(a) prohibits unlawful employment practices and unlawful discrimination by an employer. The "overriding policy of the LAD ... is to protect society at large." Cedeno v. Montclair State Univ., 163 N.J. 473, 478, 750 A.2d 73, 75 (2000). Its purpose "is nothing less than the eradication of the cancer of discrimination." Fuchilla v. Layman, 109 N.J. 319, 334, 537 A.2d 652, 660 (1988) (citing Jackson v. Concord Co., 54 N.J. 113, 124, 253 A.2d 793, 799 (1969)). The statement of legislative intent enacted as part of the LAD reads as follows:
[S]uch discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundations of a free democratic State ... The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act.
[N.J.S.A. 10:5-3.]
Generally, there are two types of sexual harassment in the employment context: (1) quid pro quo, where "an employer attempts to make an employee's submission to sexual demands a condition of his or her employment"; and (2) hostile work environment, "when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." *736 Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 601, 626 A.2d 445, 452 (1993). In this case, plaintiff alleges that she was subjected to a hostile work environment at JBH's Parsippany office.
Evidence that other female employees of JBH were sexually harassed tends to substantiate plaintiff's claim of sexual discrimination and a hostile work environment. "Evidence of sexual harassment directed at other women is relevant to both the character of the work environment and its effects on the complainant." Lehmann, supra, 132 N.J. at 611, 626 A.2d at 457. Furthermore, such evidence is generally admissible to prove an employer's motive or intent to discriminate. Rendine v. Pantzer, 141 N.J. 292, 309, 661 A.2d 1202, 1213 (1995). In addition, "[e]vidence of other acts of harassment is extremely probative as to whether the harassment was sexually discriminatory and whether the [employer] knew or should have known that sexual harassment was occurring despite the formal existence of an anti-harassment policy." Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 111 (3rd Cir.1999), cert. denied, 528 U.S. 1074, 120 S.Ct. 786, 145 L.Ed.2d 663 (2000).
Evidence that other female employees were sexually harassed is also pertinent to JBH's knowledge or awareness of the existence of a hostile work environment at one or more of its offices. "If the employer had actual or constructive knowledge of the harassment and did not promptly and effectively act to stop it, it will be liable." Woods-Pirozzi v. Nabisco Foods, 290 N.J.Super., 252, 268, 675 A.2d 684, 691 (App.Div.1996). Moreover, such evidence may tend to demonstrate that JBH's anti-harassment policy was ineffective. "[I]t is hard to imagine evidence more relevant to the issue of whether a sexual harassment policy was generally effective than evidence that male [employees] did not respect it and that female [employees] were not protected by it." Hurley, supra, 174 F.3d at 111. JBH may be found negligent "in combating the creation of a sexually discriminatory hostile work environment by failing to establish meaningful and effective policies and procedures for employees to use in response to harassment." Gaines v. Bellino, 173 N.J. 301, 318, 801 A.2d 322, 332 (2002). "[T]he absence of effective preventative mechanisms will present strong evidence of an employer's negligence." Lehmann, supra, 132 N.J. at 622, 626 A.2d at 463. Finally, any evidence that may tend to show that upper management encouraged gender-based harassment through its indifference is particularly probative with respect to plaintiff's claim for punitive damages. Mancini v. Township of Teaneck, 349 N.J.Super. 527, 568, 794 A.2d 185, 210 (App.Div.2002). See also Connolly v. Burger King Corp., 306 N.J.Super. 344, 349, 703 A.2d 941, 943 (App.Div.1997) ("[T]he absence of effective responses to sexual harassment claims in general may foster an atmosphere of tolerance thereby contributing to a sexually hostile atmosphere and may constitute the willful indifference which is a predicate for the award of punitive damages.")
The essential question is whether the probative value of the terms of the Dodrill settlement agreement is outweighed by any harm that may result from disclosure. Several competing interests exist with respect to disclosure of the settlement terms: plaintiff's interest in learning what JBH knew, when JBH knew it, and how JBH responded to a prior complaint for sexual harassment filed by a female employee; JBH's concern for maintaining the confidentiality of the settlement reached with Ms. Dodrill; and Ms. Dodrill's interest in preventing the disclosure of personal and undoubtedly sensitive matters. Of course, *737 these interests must be considered in light of the need for "vindication of the public interest in discrimination-free employment." Dixon v. Rutgers, The State Univ. of N.J., 110 N.J. 432, 464, 541 A.2d 1046, 1063 (1988) (O'Hern, J., concurring). See also Lehmann, supra, 132 N.J. at 600, 626 A.2d at 452 ("The LAD was enacted to protect not only the civil rights of the individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace.") (citing Fuchilla, supra, 109 N.J. at 335, 537 A.2d at 660).
Neither party has cited authority directly on point, and the court's: "research does not disclose any published decision in New Jersey dealing with this precise issue. Nonetheless, analogies abound." United Jersey Bank v. Wolosoff, 196 N.J.Super., 553, 565, 483 A.2d 821, 827 (App.Div.1984). In In re Grand Jury, 286 F.3d 153 (3rd Cir.2002), the Third Circuit affirmed the district court's denial of the defendant's application to quash a grand jury subpoena, through which the government sought disclosure of information subject to a civil protective order. In reaching its decision, the court noted: "[I]n the end, society's interest in the assiduous prosecution of criminal wrongdoing almost always will outweigh its interest in the resolution of a civil matter between private parties ... and thus, a civil protective order ordinarily cannot be permitted to sidetrack a grand jury's investigation." Id. at 163 (quoting In re Grand Jury Subpoena (Roach), 138 F.3d, 442, 445 (1st Cir.), cert. denied, 524 U.S. 939, 118 S.Ct. 2345, 141 L.Ed.2d 716 (1998) (other citations omitted)). In Payton v. New Jersey Turnpike Auth., 148 N.J. 524, 691 A.2d 321 (1997), the Court concluded that the plaintiff was entitled to the discovery of documentation related to her former employer's internal investigation of her sexual harassment complaint, despite the trial court's entry of a protective order preventing disclosure of the information, concluding:
Because of the importance of the remedial process in evaluating an employer's good faith in counteracting and attacking sexual harassment and in eliminating hostile work environment, we conclude that materials relating to an employer's internal investigation of alleged sexual harassment are relevant to a claim under the LAD and hence generally discoverable.
[Id. at 539, 691 A.2d at 328.]
In Dixon, Supra, 110 N.J. 432, 541 A.2d 1046, the Court found that plaintiff, an assistant professor who filed suit under the LAD alleging she was denied tenure because of gender, was entitled to disclosure of confidential peer review materials used in the university's tenure decision-making process. The Court concluded the information was relevant to her LAD claim because "only by comparing her record with others can she show that the rationale for her denied tenure and promotion was not equally applied to exclude others." Dixon, supra, 110 N.J. at 445, 541 A.2d at 1053. In the case of In re Kozlov, 79 N.J. 232, 243-44, 398 A.2d 882, 887-88 (1979), the Court concluded that under some circumstances it may be appropriate to pierce the attorney-client privilege to obtain confidential information if there is "a legitimate need of the party to reach the evidence sought to be shielded," a "showing of relevance and materiality of that evidence to the issue before the court," and that "the information sought could not be secured from any less intrusive source" (citations omitted). See also United Jersey, supra, 196 N.J.Super. at 567, 483 A.2d at 828 ("We are persuaded that when confidential communications are made a material issue in a judicial proceeding, fairness demands the waiver of privilege.") (citation omitted).
*738 In certain situations, however, courts have determined that the preservation of confidentiality outweighed the need for disclosure of potentially relevant information. In Loigman v. Kimmelman, 102 N.J. 98, 105-06, 505 A.2d 958, 962 (1986), the Court found that despite plaintiff's statutory and common law right of access to public records, plaintiff was not entitled to disclosure of information pertaining to an audit of the Monmouth County Prosecutor's confidential bank account, concluding "when reasons for maintaining a high degree of confidentiality in the public records are present, even when the citizen asserts a public interest in the information, more than citizen's status and good faith are necessary to call for production of the documents." In UMC/Stamford, Inc. v. Allianz Underwriters Ins. Co., 276 N.J.Super. 52, 647 A.2d 182 (Law Div.1994), the court denied disclosure to a non-settling defendant/insurer of the terms of a confidential settlement agreement entered into between plaintiff and several of plaintiff's other environmental liability insurers. The court noted that confidentiality was a "key component" to settlement negotiations, and that "ordering disclosure of settlements already reached in this case would not only jeopardize those settlements but would chill and deter other parties from entering into confidential discussions to settle their disputes without a lengthy trial." UMC/Stamford, supra, 276 N.J.Super. at 71, 647 A.2d at 191. Thus, determining the appropriate balance of interests requires an "exquisite weighing process by the trial judge," Loigman, supra, 102 N.J. at 108, 505 A.2d at 964, and disclosure is not appropriate in all circumstances.
As noted by JBH, there exists a strong public policy in New Jersey endorsing the settlement of litigation. See Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990) ("Settlement of litigation ranks high in our public policy.") (citation omitted). JBH contends that "[t]hat policy would be compromised if parties were unable to settle for fear that the fact of the settlement would later be used in another matter as proof of liability." However, this broad assertion is unsubstantiated by any specific showing of potential harm or prejudice to the settling parties. See Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 381-82, 662 A.2d 546, 559 (1995) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient."). In fact, the settlement agreement reviewed by the court notes that the payment of monies by JBH to Ms. Dodrill was "no admission of liability on the part of the Company that it has done anything wrong."
It is unlikely that limited disclosure of the confidential settlement agreement pursuant to a protective order will undermine "the social goal of encouraging settlements." Czuj v. Toresco Enters., 239 N.J.Super. 123, 128, 570 A.2d 1049, 1052 (Law Div.1989). As one commentator has indicated, even if the use of confidential settlement agreements was prohibited, such prohibition would not be a major deterrent to settlement: "Plaintiffs would still want their money as soon as they could get it and without risk of a loss at trial. Defendants would still want to avoid trial in order to limit dissemination of bad publicity as much as possible." Jack H. Friedenthal, Secrecy in Civil Litigation; Discovery and Party Agreements, 9 J.L. & Pol'y 67, 95-96 (2000). Thus, in most cases, settlements result from a mutual desire for certainty and a mutual desire to avoid the risks inherent in a jury trial.
There is no need to speculate as to why Ms. Dodrill entered into a confidential settlement agreement. She had a right to do so. Nevertheless, it is noteworthy that the confidential agreement does not provide *739 for absolute secrecy. The parties to the confidential agreement contemplated that disclosure of the settlement terms would be appropriate under certain circumstances. Paragraph 6 of the agreement provides in pertinent part: "Former Employee shall not reveal the terms of this Agreement to anyone, except to Former Employee's family, legal and financial advisors, and if otherwise required, by subpoena or court order" (emphasis added).
The information that plaintiff seeks is highly relevant. Limited disclosure is not contrary to public policy, and it will not prejudice the settling parties. Accordingly, plaintiff's interest in being free from unlawful discrimination in the workplace, coupled with the public's interest in the eradication of discrimination, outweighs JBH's interest in maintaining the confidentiality of the Dodrill settlement agreement. "It has been well settled that our mission, as a judiciary, is to limit the exclusion of probative evidence and to promote a search for the truth." Tartaglia v. Paine Webber, Inc., 350 N.J.Super. 142, 149, 794 A.2d 816, 820 (App.Div.2002). "[T]he fullest disclosure of the facts will best lead to the truth and ultimately to the triumph of justice." In re Selser, 15 N.J. 393, 405, 105 A.2d 395, 401 (1954).
Therefore, plaintiff is entitled to discovery related to Ms. Dodrill's prior employment with JBH and her lawsuit against JBH, including the terms of the confidential settlement agreement. Disclosure of the terms of the confidential agreement undoubtedly will affect Ms. Dodrill's individual right to privacy, however. Thus, sensitive balancing is essential to accommodate plaintiff's need for discovery while at the same time preventing unwarranted disclosure of the confidential settlement agreement. In order to appropriately address these concerns, disclosure of the terms of the Dodrill settlement shall be limited by a protective order pursuant to R. 4:10-3. Access to the settlement agreement shall be restricted to plaintiff, her attorney and her experts. See Dixon, supra, 110 N.J. at 456, 541 A.2d at 1049. Furthermore, these individuals must not make any further disclosure without subsequent order from the court. See Alk Assoc., Inc. v. Multimodal Applied Sys., Inc., 276 N.J.Super. 310, 316, 647 A.2d 1359, 1362 (App.Div.1994).
Notwithstanding the settlement and release agreement signed by Ms. Dodrill and JBH, the settling parties are not prohibited from providing plaintiff, plaintiff's attorney, or plaintiff's experts with information pertaining to Ms. Dodrill's employment or her lawsuit, including all terms of the settlement agreement. With respect to any and all such communications, the provision in the confidential settlement agreement that requires Ms. Dodrill to return payments she received if she "tells anyone the amount paid to Former Employee or any other term of this Agreement" shall be void and unenforceable.